# Illinois Official Reports

## Appellate Court

---

## *People v. Stewart*, 2018 IL App (3d) 160205

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDON D. STEWART, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0205 |
| Filed | November 2, 2018 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 14-CF-340; the Hon. Cynthia M. Raccuglia, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Amber Hopkins-Reed, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Karen Donnelly, State's Attorney, of Ottawa (Patrick Delfino, David J. Robinson, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justices Lytton and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1   Defendant, Brandon D. Stewart, appeals from his convictions for aggravated unlawful use of a weapon (AUUW) and aggravated assault. Defendant argues that (1) the State's admission of a certificate attesting that defendant did not possess a valid Illinois Firearm Owners Identification (FOID) card violated his constitutional right of confrontation and (2) the trial court did not exercise its discretion when it responded to the jury's request for transcripts. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3   The State charged defendant with AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2014)) and aggravated assault (*id.* § 12-2(c)(2)). The AUUW charge alleged defendant

"knowingly carried on his person an uncased, loaded, and immediately accessible pistol, at a time when he was not on his own land, abode, legal dwelling, or fixed place of business, and not on the land or legal dwelling of another person as an invitee with that person's permission, at a time when he had not been issued a currently valid license under the firearm concealed carry act and had not been issued a currently valid [FOID] card."

The court appointed counsel to represent defendant. On the morning of February 22, 2016, the case proceeded to a jury trial.

¶ 4   Betty Brown testified that on September 13, 2014, she was working at The Results Companies (Results) call center in Streator. Brown left the building during her lunch break to meet with her boyfriend, Darion. Darion had come to the call center to speak with defendant, who was also employed by Results. At the time, Darion was having "some issues" with defendant. Darion was unable to speak with defendant at that time, and Brown drove Darion to his house. When Brown returned to the call center, she encountered the defendant outside of the building. Defendant walked up to Brown, placed his arm around her, put a gun to Brown's chest, and said "you want to call him here." Defendant thought Brown had called Darion to the call center. Brown thought she was going to die. Eventually, defendant pushed Brown and fired the gun over Brown's head toward a house located across the street. Defendant then fled from the scene.

¶ 5   David Vitos testified he was employed at Results. On September 13, 2014, toward the end of Vitos's lunch break, he heard a gunshot. Vitos turned to his left and saw defendant holding what appeared to be a silver pistol. Defendant was standing near Brown and said "if he comes back, I have eight more for him." Vitos tried to direct everyone into the building and told another employee to call the police.

¶ 6   William McCollum testified he was employed at Results on the date of the incident. McCollum was outside smoking when he heard a commotion followed by the sound of a gunshot. McCollum looked in the direction of the noise and heard glass break across the street. McCollum noticed defendant was standing in the area where the argument and loud noise originated from. Defendant was holding a silver handgun. McCollum saw defendant turn and run toward the back of the building. Later, McCollum observed a broken window across the street from the Results building.

¶ 7    Results employee Cassie Ingram testified that she was speaking with Brown when defendant pushed Brown and started to argue with her. Ingram thought defendant was holding an object that looked like a silver gun. During the argument, Ingram heard a gunshot.

¶ 8    Streator police officer Brian Wahl testified that he responded to a call of a shot fired at Results on the date of the incident. While there, Wahl spoke with Brown about the incident. Wahl described a photograph of a house located across the street from Results. According to Wahl, one of the windows in the house had been damaged by a bullet.

¶ 9    Streator police detective Troy Dodge testified that he also responded to the report of a shot fired at Results. Dodge photographed a house located across the street from the call center. The photographs showed three damaged windows. Dodge opined that a bullet had passed through two windowpanes located on the side of the house that faced Results. The bullet then penetrated a third windowpane on the side of the porch before it bounced off a fourth windowpane. Dodge collected the metal fragment from inside the porch that he described as a "flattened, jagged bullet, lead and brass content."

¶ 10    Before the conclusion of the State's case-in-chief, the State introduced into evidence a certification letter from the Illinois State Police, indicating that the defendant did not possess a valid FOID card. The court asked defense counsel if he had "[a]ny objection." Counsel responded "I think it's self-authenticating." The court replied "[i]t is and you know that" and admitted the certification letter into evidence. The certification letter stated:

> "Based on the following name and date of birth information provided by the La Salle County State's Attorney's Office, I, Public Service Administrator Beth Kiel, Firearms Services Bureau (FSB), Illinois State Police, do hereby certify, after a careful search of the FSB files, the information below to be true and accurate for Brandon D. Stewart whose date of birth is February 28, 1986, has never been issued a [FOID] Card as of February 19, 2016."

The bottom of the certification letter bears Kiel's signature and notarization.

¶ 11    At the close of the State's case, the defense moved for a directed verdict. The court denied the motion. Thereafter, defense counsel introduced and published to the jury the video surveillance footage from outside the Results call center. The video showed defendant leave, return, and then leave the area a second time. The defense rested after it introduced the video.

¶ 12    In his closing argument, defense counsel claimed that the State had presented no evidence to prove defendant shot a gun on the date of the incident. Specifically, Brown did not see defendant holding a gun, McCollum heard what he thought was a gunshot, but did not see defendant shoot a gun or see a shell casing, Vitos did not see defendant shoot a gun or observe a shell casing on the ground, and Ingram did not see a gun or hear a gunshot.

¶ 13    At 3:09 p.m., the jury retired to deliberate. Around 4:15 p.m., the jury sent a note to the court that said, "[w]here on Betty Brown's chest did she feel the gun?" The court read the jury's note and its proposed response to the parties. Neither of the parties objected to the court's response. The court's response said "[l]adies and gentlemen, you have the evidence that you received at trial and no further evidence can be presented at this time. You must base your decision on the evidence you received in open court." At 4:55 p.m., the jury sent another note to the court. The note read "[i]s it possible to receive a transcript of witness testimony?" The court read the note to the parties and proposed the following response:

"Now, I can only assume from the last question, while they didn't say whose, that they're probably looking for Miss Brown's. Now, what I'm doing is this trial was just today. It's not like it was a two-week trial and it would take too long and their job is to remember things. It was just a couple hours ago. So I'm responding as follows and let me know if you have any objection. 'Ladies and gentlemen, since you just heard the testimony today and the testimony is not transcribed yet, you must rely on your recollection of the testimony today in open court. Sincerely.' And that's just telling them because it's today, it's not transcribed yet and I'm sending this."

The parties did not object, and the court sent the response to the jury. Around 6:45 p.m., the jury returned verdicts of guilty on both charges. After hearing the evidence and arguments on the sentencing alternatives and aggravating and mitigating factors, the court sentenced defendant to a total of two years' imprisonment.

¶ 14                                II. ANALYSIS

¶ 15                            A. Confrontation Rights

¶ 16     Defendant's first argument, that the admission of a "certification" letter from a nontestifying witness violated his constitutional right to confront the witness, has not been properly preserved for appellate review. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (issue preservation requires both a contemporaneous objection at trial and a written posttrial motion raising that issue). Defendant seeks to avoid this forfeiture by arguing this issue is either reversible plain error or the result of ineffective assistance of counsel. We address each of these independent bases for review in turn.

¶ 17                                 1. Plain Error

¶ 18     Defendant argues that the admission of the certification letter is reversible plain error because the error threatened to tip the scales of justice against him. The State argues defendant cannot show error occurred because defendant acquiesced to the admission of the certification letter. The parties' arguments require that we determine whether this issue is reviewable under the plain-error doctrine or is the result of acquiescence.

¶ 19     Underlying both the plain-error doctrine and acquiescence is the principle of "procedural default." See *People v. Naylor*, 229 Ill. 2d 584, 593 (2008); *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). Acquiescence is a form of procedural default. *Swope*, 213 Ill. 2d at 217. The plain-error doctrine provides " ' "a narrow and limited *exception* to the general [rule of procedural default]." ' " (Emphasis added.) *Naylor*, 229 Ill. 2d at 593 (quoting *People v. Szabo*, 113 Ill. 2d 83, 94 (1986), quoting *People v. Pastorino*, 91 Ill. 2d 178, 188 (1982)). However, acquiescence is not subject to the plain-error doctrine. *People v. Bowens*, 407 Ill. App. 3d 1094, 1101 (2011); see also *People v. Bates*, 2018 IL App (4th) 160255, ¶ 74; *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 29; *People v. Dunlap*, 2013 IL App (4th) 110892, ¶ 12. This is because a party who acquiesces in a proceeding in a given manner cannot show he was prejudiced by the proceeding. *People v. Schmitt*, 131 Ill. 2d 128, 137 (1989). Stated another way,

"a party cannot complain of error which that party induced the court to make or to which that party consented. The rationale behind this well-established rule is that it

would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings." *Swope*, 213 Ill. 2d at 217.

In contrast, the plain-error doctrine is founded upon prejudice. Under the first prong, defendant bears the burden to establish prejudice, and under the second prong, prejudice will be presumed where the error is sufficiently serious. See *People v. Herron*, 215 Ill. 2d 167, 187 (2005). Therefore, our determination of whether the plain-error doctrine applies in this case turns on whether defendant can properly allege prejudice.

¶ 20   In the instant case, the State introduced into evidence a certification letter that stated defendant did not possess a valid FOID card. The court then expressly asked defendant if he had any objection to the certification letter. Defense counsel voiced no objection, and instead, responded "I think it's self-authenticating." Defense counsel's statement is not a direct agreement to the introduction of the certification letter. However, the combination of defense counsel's response and lack of objection establishes that defense counsel acquiesced to the admission of the certification letter. See, *e.g.*, *People v. Cox*, 2017 IL App (1st) 151536, ¶ 76 (defense counsel invited error by not objecting to the admission of a certification letter that stated defendant did not possess a FOID card). This acquiescence, in turn, functioned as a waiver of defendant's right to confront this witness by acquiescing to the admission of the certification letter. Defense counsel was empowered to make such a waiver because defendant did not object and the decision was a matter of trial tactic and strategy. *People v. Rowell*, 229 Ill. 2d 82, 102 (2008). This "waiver" is not the same as "forfeiture." Forfeited errors may be subject to plain-error review, but waiver forecloses review of a claim predicated upon the waived right. *People v. Williams*, 2015 IL App (2d) 130585, ¶ 6.

¶ 21   Defense counsel's acquiescence to the admission of the certification letter effectively waived defendant's right to confront the witness and any associated claim of error. Therefore, defendant's challenge is limited to a claim of ineffective assistance of counsel. *McGuire*, 2017 IL App (4th) 150695, ¶ 29.

¶ 22   In *Cox*, 2017 IL App (1st) 151536, ¶ 1, the State had charged Jesse Cox with AUUW based on his failure to possess a FOID card. At trial, the State introduced a letter, similar to the instant case, documenting that Cox did not possess a FOID card. *Id.* ¶ 22. The court asked defense counsel twice if she had any objection to the admission of the letter into evidence. Twice, defense counsel responded in the negative. *Id.* ¶¶ 24-25. On appeal, Cox argued that the court violated his constitutional right to confront the witness who signed the letter. *Id.* ¶ 47. The First District concluded "the defense invited the trial court to admit the certification [letter] by affirmatively responding to the trial court's questions that it had no objection to its admission," and therefore, the admission of the letter did not violate Cox's right to confront the authoring witness. *Id.* ¶ 76. The *Cox* court differentiated the facts in *People v. Diggins*, 2016 IL App (1st) 142088, the case that defendant relies on in this appeal, because defense counsel did not object to the introduction of the letter. *Cox*, 2017 IL App (1st) 151536, ¶ 82. Therefore, in *Cox*, the court found defense counsel "waived the opportunity for *prior* cross-examination by stating affirmatively that he had no objection to admitting the document." (Emphasis in original.) *Id.* ¶ 83.

¶ 23   Defendant argues *Cox* was wrongly decided and *Diggins* dictates the outcome of this appeal. In *Diggins*, over defendant's objection, the State introduced a letter that attested Shawan Diggins did not possess a valid FOID card. *Diggins*, 2016 IL App (1st) 142088, ¶¶ 6-7. The trial court overruled counsel's objection, stating " '[i]f you want an opportunity to

subpoena and cross-examine the witness and bring that person in as a witness on behalf of the [d]efense, I will give you that opportunity.' " *Id.* ¶ 7. On appeal, Diggins argued that the admission of the letter violated his constitutional right to confrontation. *Id.* ¶ 11. The First District found that the introduction of the letter, over defense counsel's objection, violated Diggins's right to confront the witness, the author of the letter. *Id.* ¶ 16.

¶ 24     Here, the instant case is more analogous to *Cox* because defense counsel did not object to the admission of the letter in this case, when directly asked by the court for an objection. In both the instant case and *Cox*, defense counsel's response to the court's question regarding an objection to the evidence constitutes waiver of defendant's constitutional right to confront this witness. See *Cox*, 2017 IL App (1st) 151536, ¶¶ 24-25; *supra* ¶ 10. Therefore, like *Cox*, defendant's confrontation claim is not subject to review under the plain-error doctrine. *Cox*, 2017 IL App (1st) 151536, ¶ 76.

¶ 25                         2. Ineffective Assistance of Counsel

¶ 26     Defendant argues that defense counsel was ineffective for failing to object to the admission of the certification letter. We find defense counsel's performance was not rendered deficient by his decision not to object to the certification letter.

¶ 27     To prevail on a claim of ineffective assistance of counsel, defendant must show (1) his attorney's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). Generally, decisions regarding "what matters to object to and when to object" are matters of trial strategy. *People v. Pecoraro*, 175 Ill. 2d 294, 327 (1997). We afford counsel's strategic decisions a high degree of deference and evaluate counsel's "performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007).

¶ 28     In the instant case, the only way defense counsel's decision not to object to the admission of the certification letter could be said to be the result of ineffective assistance is if defendant actually possessed a valid FOID card. See *Cox*, 2017 IL App (1st) 151536, ¶ 88. If defendant possessed a valid FOID card at the time of the offense, the certification letter introduced would be erroneous, and the State could not prove an essential element of the AUUW charge that was based on the theory that defendant did not possess a valid FOID card. See 720 ILCS 5/24-1.6(a)(3)(C) (West 2014). The record is devoid of any indication that defendant actually possessed a valid FOID card at the time of the incident. Therefore, defense counsel's performance was not deficient for failing to object. Moreover, counsel's inaction was consistent with his trial strategy that defendant did not shoot a gun. Accordingly, we conclude defense counsel's decision not to object to the admission of the certification letter was not the result of ineffective assistance of counsel.

¶ 29                                 B. Jury Questions

¶ 30     Defendant argues that the trial court erroneously denied the jury's request for transcripts before ascertaining the reason for the jury's request. Defendant specifically contends that the court's failure to investigate which transcript or transcripts the jury desired, before responding to the inquiry, constitutes an abuse of discretion.

¶ 31    During deliberations, the jury asked the court "[i]s it possible to receive a transcript of witness testimony?" The jury's question did not specify which witness's testimony the jury sought to review. After conferring with both attorneys, the court responded to the jurors by instructing the jurors that they must rely on their own recollection of the testimony. The court advised the jury that a transcript would not be forthcoming at that time because (1) the trial had occurred earlier that same day and (2) the transcripts were not yet transcribed.

¶ 32    It is well settled that the court has the discretion to allow or refuse a jury's request to review trial testimony. *People v. Pierce*, 56 Ill. 2d 361, 364 (1974). We will not disturb the court's decision unless the record establishes that the court abused its discretion. *Id.* The determination of whether the court abused its discretion turns on the facts and circumstances of each case. *People v. Burnett*, 73 Ill. App. 3d 750, 753 (1979). The court errs if it refuses to exercise its discretion due to its mistaken belief that it has no discretion regarding the request for information posed by the jury. *People v. Queen*, 56 Ill. 2d 560, 565 (1974).

¶ 33    Defendant relies on *People v. Bryant*, 176 Ill. App. 3d 809 (1988), to support the view that the trial court erred. In *Bryant*, the facts were unique and unlike those in the case at bar. Specifically, the jury in *Bryant g*enerically requested a copy of the trial testimony "after some time in deliberation." *Id.* at 812. Neither Bryant nor defense counsel were present when the court received the jury's request. *Id.* The court discussed the jury's request only with the prosecutor before informing the jury that " '[t]here's not a transcript available for you. You should rely on your collective memories of the testimony as you heard it.' " *Id.*

¶ 34    Here, the parties did *not* object to the response suggested by the court. In other words, the record supports the view that both sides agreed, at the time, that the court's approach was the correct approach. No abuse of discretion arises when the court confers with the prosecutor and defense counsel before adopting an approach to the jurors' question. For this reason, *Bryant* is not on point.

¶ 35    Moreover, in *Bryant*, the First District reasoned "[t]he discretionary process is facilitated where the trial court knows what specific testimony the jury desires. Failure to determine the specific evidence or testimony desired by a jury making a general request has *** been treated as a signal of the trial court's erroneous belief that it lacked discretion to grant the jury's request." *Id.* at 812-13 (citing *People v. Jackson*, 26 Ill. App. 3d 618 (1975); *People v. Autman*, 58 Ill. 2d 171, 176 (1974); *People v. Tansil*, 137 Ill. App. 3d 498, 503 (1985)). We respectfully disagree with this holding.

¶ 36    It should not make a difference to the trial court, or a reviewing court, whether the jury requested a written or recorded copy of the testimony of a prosecution witness or defense witness. Neutrality is insured if the court is unaware of the reason for the jury's request for more information or the indemnity of the witness concerning the request. On this basis, we decline to follo*w Bryant*.

¶ 37    In this case, several factors are relevant to the trial court's exercise of its discretion to provide a neutral explanation advising the jury that a transcript of any part of the trial was not available at that time. Those factors include (1) whether the trial took place over a significant time span, (2) whether the issues were complex, or (3) whether the testimony was technically detailed, particularly confusing, or beyond the realm of information readily processed by a juror with a typical attention span.

¶ 38    Moreover, it is undisputed that the jury's request for a transcript took place in a relatively short period of time, just two hours after deliberations began and a foreperson was selected by

the jurors. This suggests to our court that shortly after the deliberation process began, it became apparent that the collective memories of all jurors may not have been uniform. This is the nature of jury deliberations. Debate and discussion are a necessary part of the process.

¶ 39 In spite of the prevalence of instant replays and booth review in the world of sports, a jury should not have the same expectation of instant review available for televised, nonjudicial proceedings. Rather, the jury has a duty to pay very close attention to the unfolding process in a courtroom setting. As this experienced trial judge stated, the jury has a job to observe and remember what each juror witnessed in the courtroom. If a request for a transcript of recorded testimony becomes automatic, jurors have little incentive to concentrate on the evidence, exhibits, and arguments of counsel presented to the jury while seated in the jury box.

¶ 40 In the case at bar, the record reveals that the parties agreed with the content of the court's response. In addition, this trial was a one-day proceeding, the issues were not complex, and the subjects addressed during the testimony of each witness were fairly simple and were not beyond the realm of information readily processed by a juror. Based on these circumstances, we conclude that the court properly exercised its discretion by encouraging the jurors to rely on their own recollection of the evidence.

¶ 41                                    III. CONCLUSION
¶ 42 The judgment of the circuit court of La Salle County is affirmed.

¶ 43 Affirmed.