# Illinois Official Reports

## Appellate Court

---

### *People v. Smith*, 2019 IL App (1st) 161246

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD SMITH, Defendant-Appellant. |
| District & No. | First District, Third Division<br>No. 1-16-1246 |
| Filed<br>Rehearing denied | March 27, 2019<br>July 2, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-7235; the Hon. James N. Karahalios, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Tomas G. Gonzalez, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Brenda K. Gibbs, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1        After a jury trial, defendant, Ronald Smith, was convicted of two counts of aggravated criminal sexual assault and sentenced to 50 years' imprisonment. On appeal, defendant claims that (1) the State failed to prove beyond a reasonable doubt the aggravating factor, namely that he displayed a knife "during the commission" of the sexual assaults, and (2) the circuit court failed to *sua sponte* instruct the jury on the lesser-included offense of criminal sexual assault. We find defendant's reading of the aggravated criminal sexual assault statute unreasonable and hold that, under a proper reading of it, the evidence was more than sufficient to support the convictions. We reject his claim of error regarding the lesser-included instruction based on waiver, as defendant himself made the decision not to seek that instruction.

¶ 2                                                    BACKGROUND

¶ 3        Defendant was charged by indictment with, among other things, two counts of aggravated criminal sexual assault. 720 ILCS 5/11-1.30(a)(1) (West 2014). The gist of the indictment was that defendant forced his penis into S.N.'s mouth through the use or threat of force while displaying a knife. Defendant opted to proceed *pro se* by way of jury trial.

¶ 4        At trial, S.N. testified that she met defendant through an online dating service approximately seven years before trial. When S.N. met defendant, he lived in Connecticut. After meeting, defendant and S.N. began a long-distance relationship. Sometime before 2014, the relationship ended. However, in fall 2014, defendant contacted S.N. via Skype, and they renewed their online relationship. Sometime thereafter, defendant moved to Illinois, and in October 2014, he moved into S.N.'s apartment with her and her roommate, Wilder Prieto.

¶ 5        In January 2015, S.N. ended her relationship with defendant and told him that he had "a month to get his life together and move out." In February, Prieto moved out of the apartment. As a result, S.N. allowed defendant to assume Prieto's portion of the lease and continue living in the apartment. S.N. testified that from the time she ended her relationship with defendant in January until April 8, 2015, she had no romantic relationship or sexual contact with defendant.

¶ 6        On April 7, 2015, S.N. went to see the movie "Fast and Furious 7." S.N. was initially planning on going alone, but defendant asked to come along. At first, S.N. agreed, explaining to defendant, "I will buy my ticket, go buy your ticket, and we'll just watch it." In response, defendant told S.N. that he was "thinking we would go like boyfriend/girlfriend" and "make out afterwards." S.N. ultimately went to the movie alone.

¶ 7        When S.N. returned home from the movie theater, defendant was not there. S.N. locked the front door, went upstairs, and took a shower. At some point while S.N. was showering, defendant opened the door, walked into the bathroom, and asked if he could get in the shower with S.N. She refused, defendant left, and S.N. finished showering.

¶ 8        After showering, S.N. went into her bedroom, locked the door, spread Legos across the floor in front of the door, and then got dressed. S.N. explained that defendant had tried coming into room before, so she "thought if he comes into my room in the dark, he'll step on [the Legos]. That hurts like hell, so he'll make a noise, and that will wake me up." S.N. then went to sleep.

¶ 9    S.N. awoke to the sound of her doorknob "jiggling." According to her, "the door opened" and defendant "was standing in the doorway, and he had a knife in his hand and a roll of duct tape in the other hand." S.N. asked defendant "if he would hurt me." Defendant said, "Yes."

¶ 10    Defendant then entered S.N.'s bedroom and got on top of S.N., pinning down her arms with his knees. S.N. attempted to resist and began to cry. Defendant then grabbed S.N.'s hands, twisted them over her head, and tried to tape them together. S.N. begged defendant not to hurt her, telling him to stop and that "if he loved me, he wouldn't hurt me." According to S.N., at one point when he was trying to tape S.N.'s hands together, defendant put the knife down.

¶ 11    At some point during the struggle, defendant "started to move his hips towards [S.N.'s] face," and then, while holding her wrists with one hand, used his other hand to put his penis in S.N.'s mouth. S.N. began coughing and gagging, and defendant got off of her. S.N. then leaned over and coughed into a garbage can.

¶ 12    Defendant then laid down on his back where S.N. had been lying and grabbed S.N. by the neck and "shoved me on his penis again." S.N. explained that defendant grabbed her by the nape of her neck and forced her head up and down, causing her mouth to again come in contact with his penis. S.N. became sick again and began coughing. While S.N. lay on the bed crying and coughing into her pillow, defendant stood up and left the room.

¶ 13    But defendant was not through with S.N. He returned to her room—this time fully nude—again brandishing his knife and carrying a roll of duct tape. Upon entering S.N.'s room, defendant got on her bed and straddled her. Defendant once again tried without success to tape S.N.'s wrists together. Defendant then put his penis on S.N.'s lips. S.N. began coughing again, so defendant got off of her and began "spooning" her as she cried. Eventually, defendant fell asleep in S.N.'s bed. S.N. explained that she did not move when defendant fell asleep because she was "scared that any noise would wake him up and that he would come after me again."

¶ 14    After full admonishment from the court, defendant testified on his own behalf in narrative fashion. He admitted that he went into S.N.'s room on the night in question but claimed that he was wearing pants and boxer shorts. Defendant also admitted that he used a knife to open S.N.'s door, but he testified that he put the knife in his pocket immediately after opening the door. He testified that he got into bed with S.N. and took off his pants, but he stated that he still had his boxer shorts on, and he denied that he had the knife in his hand.

¶ 15    Defendant then "grab[bed] [S.N.] to face me." In response, S.N. told defendant, "I said get out, no." Defendant replied, "[J]ust come on." Thereafter, defendant testified that he knocked on the bathroom door while S.N. was showering and asked if he could join her. After S.N. refused, defendant left to go walk a neighbor's dog.

¶ 16    When he returned, defendant asked S.N. to perform oral sex on him. S.N. said no. However, defendant told the jury, he "knew that if I would just keep on pressuring her, eventually she would say yes because before she was mad at me and she was like, no *** I told you, you have to do things for me first, you have to change, I have to see it." Defendant explained that S.N. was "upset because I was drinking more heavy," and he admitted that he had been drinking on the night in question.

¶ 17    Thereafter, defendant admitted that he put his hands on S.N. and got on top of her while saying "come on." S.N. continued to say "no." Defendant continued pressuring S.N. for oral sex, saying, "come on, ***, you know, just a little." Defendant then told the jury, "[a]nd then from there she just said, I did force her, but at no time did I have a knife in my hand. After that

right there [S.N.] told me, she was like, she's like, I kept asking her, she was like, okay, fine, just get on your back." According to defendant, S.N. then performed oral sex on him for approximately two minutes. Defendant testified that he did not ejaculate.

¶ 18 Afterwards, defendant and S.N. "kiss[ed] passionately." Defendant and S.N. laid in bed together for approximately 20 to 30 minutes. At that point, defendant asked S.N., "let's just do it again." S.N. refused, stating, "I already did it once." In response, defendant said, "come on, just a little bit more." Thereafter, defendant testified that he "got up and she had her head like up on the bed. And then I'm not going to say I forced her because I didn't. I was already naked because I was inside the bed with her. And then I put my penis into her mouth at that time. That was the second time."

¶ 19 The following morning, defendant asked S.N. for vaginal sex. She refused, and they argued. According to defendant, at that point, he told S.N. that he "felt like fucking [her] up." However, he denied threatening her the night before. S.N. then went into the bathroom. Defendant tried to hug S.N., and she asked defendant if he was going to hurt her. Defendant testified that he answered "no."

¶ 20 After deliberating, the jury found defendant guilty of two counts of aggravated criminal sexual assault. The circuit court sentenced defendant to 25 years in prison on each count, to be served consecutively. This appeal followed.

¶ 21 ANALYSIS

¶ 22 Defendant raises two arguments on appeal. First, his convictions for aggravated criminal sexual assault should be reduced to criminal sexual assault, because the State failed to prove that he displayed a knife during the commission of a sexual assault. Second, he is entitled to a new trial because the circuit court failed to *sua sponte* tender a jury instruction on the lesser-included offense of criminal sexual assault. We take the questions in that order.

¶ 23 I

¶ 24 Defendant claims the State failed to prove beyond a reasonable doubt that he used a knife "during the commission of" the sexual assaults, because he was not holding or displaying the knife at the precise moment the sexual penetrations occurred. While couched as a challenge to the sufficiency of the evidence, this claim first requires us to interpret the aggravated criminal sexual assault statute. See, *e.g.*, *People v. Ward*, 215 Ill. 2d 317, 324 (2005) (in determining whether evidence was sufficient to prove defendant guilty of possession of harmful materials, question "devolve[d] into an issue of statutory interpretation" as to meaning of term "possession" in statute); *People v. Barnes*, 2017 IL App (1st) 142886, ¶ 21 (sufficiency of evidence of armed-violence conviction depended on interpretation of mob-action statute that served as predicate for conviction).

¶ 25 Our task in interpreting a statute is to give effect to the legislature's intent, "keeping in mind that the best and most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning." *People v. Young*, 2011 IL 111886, ¶ 10. We resort to other aids of statutory construction only if the language of the statute is ambiguous. *People v. Glisson*, 202 Ill. 2d 499, 505 (2002).

¶ 26 The offense of aggravated criminal sexual assault is codified in section 11-1.30 of the Criminal Code of 2012, which provides in relevant part:

"(a) A person commits aggravated criminal sexual assault if that person commits criminal sexual assault and any of the following aggravating circumstances exist *during the commission of the offense* \*\*\*:

(1) the person displays, threatens to use, or uses a dangerous weapon, other than a firearm, or any other object fashioned or used in a manner that leads the victim, under the circumstances, reasonably to believe that the object is a dangerous weapon[.]" (Emphasis added.) 720 ILCS 5/11-1.30(a)(1) (West 2014).

¶ 27    This case turns on the meaning of the phrase, "during the commission of the offense." Here, of course, the "offense" referenced is criminal sexual assault. Relevant here, criminal sexual assault occurs when a person "commits an act of sexual penetration and \*\*\* uses force or threat of force." *Id.* § 11-1.20.

¶ 28    So the "offense" of criminal sexual assault is not merely sexual penetration, full stop—it is sexual penetration plus the use or threat of force, a separate element of the offense. The precise act of sexual penetration occurs at a fixed moment (or moments) in time. That moment occurs, relevant to this case, when "contact, however slight," occurs between "the sex organ \*\*\* of one person and" the "mouth \*\*\* of another person." *Id.* § 11-0.1.

¶ 29    The use or threat of force, on the other hand, does not occur solely at the precise time of sexual penetration. To be sure, the use or threat of force may continue *during* the sexual penetration—it usually does—but that is not when the use or threat of force *begins*.

¶ 30    The use of force occurs "when the accused overcomes the victim by use of superior strength or size, physical restraint, or physical confinement." *Id.* By definition, that force will *precede* the act of sexual penetration by at least some amount of time—seconds, minutes, whatever amount of time it takes to "overcome" the victim.

¶ 31    So, too, with the "threat of force," which occurs, in relevant part, "when the accused threatens to use force or violence on the victim \*\*\*, and the victim under the circumstances reasonably believes that the accused has the ability to execute that threat." *Id.* It is so obvious that it hardly requires saying: A threat of force precedes the sexual penetration by some amount of time; it lingers over the victim, who is subdued precisely because the victim has a reasonable belief that the accused "has the ability to execute that threat" of force. *Id.*

¶ 32    The point being, the "offense" of criminal sexual assault does not begin and end at the fixed point in time of the sexual penetration. It begins when the offender first uses force or the threat of force along the way toward ultimately accomplishing sexual penetration. So when the aggravated criminal sexual assault statute provides for the aggravation of the crime based on the "display[ ], threat[ ] to use, or use[ ]" of a dangerous weapon "during the commission of the offense," the phrase "during the commission of the offense" must include the period of time in which the offender used or threatened force. *Id.* § 11-1.30(a)(1). Any other reading would ignore one of the elements of criminal sexual assault and focus exclusively on the other, sexual penetration.

¶ 33    So we categorically reject defendant's claim that he could not have been guilty of aggravated criminal sexual assault unless he displayed the knife at the precise moment of sexual penetration.

¶ 34    With that understanding, we review the evidence to determine if it was sufficient to convict defendant of aggravated criminal sexual assault. We review the evidence in the light most

favorable to the State and ask whether any rational juror could have found the required elements proven beyond a reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 35 S.N. testified that, during the first incident, defendant (1) used a knife to break into S.N.'s room, (2) stood in her doorway brandishing the knife, (3) told S.N. he was going to hurt her, (4) entered S.N.'s room while holding the knife and a roll of duct tape, (5) got into S.N.'s bed while still holding the knife and got on top of her, and (6) while holding the knife, struggled to get control of S.N. before setting the knife down, grabbing her hands, and forcing his penis into her mouth. That testimony was more than sufficient for a rational juror to conclude that defendant displayed the knife during the commission of the offense. Defendant both used *and* threatened force while holding—"displaying"—the knife in his hand.

¶ 36 We are not moved in the slightest by the fact that near the tail end of this first incident, defendant put the knife down. First, as a practical matter, to suggest that the knife did not remain a threat to the victim here is utterly unrealistic and not supported by the evidence. A knife set down, placed in the offender's pocket, or even set on the floor near the bed can always be retrieved again. Second, as a literal matter, the requirement that the knife be displayed "during the commission of the offense" does not require that it be displayed at *all* times during its commission.

¶ 37 During the second incident, according to S.N.'s testimony, after first leaving her room, defendant (1) returned to her bedroom, again holding a knife and a roll of duct tape, (2) got onto S.N.'s bed, (3) straddled S.N., and (4) put his penis on her mouth. Afterwards, defendant fell asleep next to S.N., who explained at trial that she did not get out of bed that night because she was too scared to wake up defendant.

¶ 38 Again, this evidence was amply sufficient to convict defendant. Defendant unquestionably displayed that knife when he entered the room. The knife was either held by or near defendant at all relevant times, always looming as an option for defendant if his victim did not comply. That is to say nothing of the fact that a man entering a room with a knife and duct tape, in and of itself, could cause a reasonable person in S.N.'s position to believe that defendant had the means and intention of using force to get what he wanted from her.

¶ 39 We could stop there, but we would add that the jury was not required to discount defendant's prior threat of violence toward S.N., during the first incident, when he told her he was going to hurt her. The jury could have rationally determined that S.N. had not forgotten that earlier threat, which was followed up by a brutal, violent sexual assault the first time around. Given that defendant was returning for the second time with that same knife and that same roll of duct tape, it would defy logic and experience for someone in S.N.'s position not to view that knife as a threat to her once more. At a minimum, a rational juror could have found that she reasonably regarded it as such.

¶ 40 The evidence was more than sufficient to convict defendant of each count of aggravated criminal sexual assault.

¶ 41 II

¶ 42 We next consider defendant's claim that the trial court erred by not tendering a jury instruction on the lesser-included offense of criminal sexual assault. A criminal defendant has a due process right to have the jury properly instructed on the law. See U.S. Const., amend. XIV; *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) ("In a criminal trial, the State must prove

every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement."). Corollary to that right, a criminal defendant has a right to request a jury instruction for any offense that is a lesser-included offense of the charged offense. *People v. Brocksmith*, 162 Ill. 2d 224, 228 (1994).

¶ 43     Rights, however, can be waived. "[W]aiver is an intentional relinquishment or abandonment of a known right or privilege." *People v. Lesley*, 2018 IL 122100, ¶ 36. And that is exactly what occurred in this case. To be sure, during the instruction conference, defendant initially requested a lesser-included offense instruction. But then the following colloquy ensued:

> "THE COURT: Do you want the lesser included offenses to be given to the jury? That means if they find that you did this but didn't display a weapon, they can find you guilty. The way it currently stands is the only way that they can find you guilty of either one is if you displayed the weapon, the knife. It is up to you. Your choice.
>
> THE DEFENDANT: The only reason why I said that—
>
> THE COURT: I understand, but I just need to know what you want to do. Again, I am going to accommodate you. So far I have done every single thing you have asked me for in this case. If you want it, you can have it. I want you to think about it, because what I'm saying is that the way it stands at the moment if they don't prove that you used the knife, that you displayed the knife, you walk. If you give them the lesser included, they don't have to prove that you displayed the knife. All they have to prove is that you did it. The knife is irrelevant. If they prove that, then you're tagged. What do you want to do?
>
> THE DEFENDANT: I testified because I—because I did put my penis in [S.N.'s] mouth. I never once contested that. I just said it was consensual. What I said, I told the entire truth. That's what I did. I don't want to show prejudice to myself where I walk on a technicality. I want to give the State the opportunity—that she doesn't be prejudiced.
>
> THE COURT: Do you want to submit the lesser included offense?
>
> THE DEFENDANT: No objection.
>
> THE COURT: No, I didn't ask if you had an objection. It has to be your motion. It has to be your request.
>
> THE DEFENDANT: No. Everything is fine then.
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: No, as it states. I will leave it like that."

¶ 44     That is a textbook example of waiver. Defendant possessed a right—the right to request a lesser-included offense instruction. The right was a *known* right, as evidenced by defendant's own words and the circuit court's patient explanations. And defendant voluntarily relinquished that right after the circuit court admonished him of the potential consequences of requesting a lesser-included offense instruction. See *People v. Cox*, 2017 IL App (1st) 151536, ¶ 83 (finding that defendant waived his right to cross-examine a witness "by stating affirmatively that he had no objection to admitting" a document, "even though it was clear that meant there would be no cross-examination prior to its admission").

- 7 -

¶ 45      Undeterred, defendant claims that the circuit court committed second-prong plain error by failing to *sua sponte* tender a lesser-included offense instruction, despite defendant's conscious decision at trial to not request a lesser-included offense instruction. We cannot agree.

¶ 46      The plain-error doctrine is codified in Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), which states: "Plain errors or defects affecting substantial rights may be noticed *although they were not brought to the attention of the trial court*." (Emphasis added.) As evidenced by the italicized language, the plain-error doctrine can only apply to arguments that were forfeited—that is, arguments that "were not brought to the attention of the trial court." *Id.*; see *Lesley*, 2018 IL 122100, ¶ 37 ("Forfeiture is defined as the failure to make the timely assertion of the right."); *People v. Phipps*, 238 Ill. 2d 54, 62 (2010) ("forfeiture applies to issues that could have been raised but were not").

¶ 47      Here, however, as we have already explained, we do not face a situation where defendant failed to raise an issue before the trial court. To the contrary, defendant engaged in a lengthy discussion with the trial judge, who made it clear that defendant had the option: He could tender an instruction on criminal sexual assault, a conviction that would be easier to obtain because the State would not have to prove the display of the knife, or he could go for the all-or-nothing approach of waiving the lesser-included instruction, thus facing only conviction on aggravated criminal sexual abuse (which would require proof that he displayed the knife) or acquittal. Defendant made his choice. He went for the all-or-nothing approach. He did not forfeit his right to a lesser-included instruction. He *waived* it.

¶ 48      The distinction is critical here, because while plain-error review is available for errors that were forfeited, it is not available for those that were waived.

¶ 49      *People v. Patrick*, 233 Ill. 2d 62 (2009), provides a good illustration. Patrick claimed error in the giving of a jury instruction at his murder trial, as it allowed the jury to consider involuntary manslaughter only if it first acquitted him of first degree murder. *Id.* at 76. Our supreme court first found the issue forfeited, because Patrick failed to object to the instruction and failed to raise any claim of error in his posttrial motion. *Id.* Defendant then sought plain-error review of the forfeited jury-instruction argument. The supreme court held that, in addition to forfeiting the error, Patrick *waived* it, too, because he himself tendered that jury instruction. *Id.* at 76-77. The court thus "decline[d] to address Patrick's plain-error claim because Patrick invited any error by submitting the jury instruction." *Id.* at 77.

¶ 50      Still more on point is the earlier supreme court decision of *People v. Carter*, 208 Ill. 2d 309, 319 (2003), where defendant challenged his first degree murder conviction, claiming that the trial court erred by not tendering an instruction to the jury on the lesser-included offense of involuntary manslaughter. The record showed that defendant affirmatively told the trial court that he did not want that lesser-included instruction tendered. *Id.* Our supreme court held that the doctrine of "invited error" precluded the defendant from challenging an action of the trial court that the defendant, himself, requested. *Id.*

¶ 51      As in *Patrick* and *Carter*, defendant here waived his right to challenge the trial court's action because it was the very action he invited. Whether we couch it in terms of "waiver" or "invited error," plain-error review of that action is not available. See also *People v. Stewart*, 2018 IL App (3d) 160205, ¶ 20 ("Forfeited errors may be subject to plain-error review, but waiver forecloses review of a claim predicated upon the waived right."); *People v. Boston*, 2018 IL App (1st) 140369, ¶ 109 ("Plain-error review is forfeited *** when the defendant

invites the error.").

¶ 52                                    CONCLUSION

¶ 53              For these reasons, we affirm defendant's conviction.

¶ 54              Affirmed.