2021 IL App (1st) 191244-U

THIRD DIVISION
March 31, 2021

1-19-1244

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 14412 |
| | ) | |
| ROBERT WARNER, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

ORDER

¶ 1     *Held:* The evidence was sufficient to support the defendant's aggravated assault conviction where the surveillance video of the incident and the officer's testimony corroborated the victim's account. Plain error review is not available to the defendant where he tendered the jury instruction he now challenges and thus invited any error. Because of overwhelming evidence of the defendant's guilt, he cannot show prejudice to establish ineffective assistance of trial counsel.

¶ 2     Defendant Robert Warner was arrested on the evening of September 16, 2018 for allegedly threatening Marvin Ellis, an on-duty Chicago Transit Authority employee, with a machete at the Cicero Green Line station. The case proceeded to a jury trial on two counts, unlawful use or possession of a weapon by a felon, and aggravated assault.

¶ 3 The jury found Warner not guilty of unlawful use or possession of a weapon by a felon, but guilty of aggravated assault. The trial court sentenced Warner to five years' imprisonment based on his prior qualifying conviction.

¶ 4 Warner raises three issues on appeal. First, he contends the State failed to prove him guilty beyond a reasonable doubt because the surveillance video of the incident did not corroborate the victim's testimony about being threatened with a machete. Second, he contends the jury instructions given for aggravated assault did not instruct the jury on the use of the weapon during the commission of the assault as opposed to merely having the weapon in his possession during the assault. Third, he contends trial counsel was ineffective for failing to object to irrelevant testimony that another person was injured during the incident.

¶ 5 For the following reasons, we affirm Warner's aggravated assault conviction and his five-year sentence of imprisonment.

¶ 6                                    BACKGROUND

¶ 7 In the early evening of September 16, 2018, Warner was arrested for allegedly threatening Ellis, a CTA customer service assistant, with a machete. Warner was indicted on five counts: (1) unlawful use or possession of a weapon by a felon; (2) felony aggravated assault; (3) criminal damage to government supported property; (4) unlawful use of a weapon; and (5) misdemeanor aggravated assault.

¶ 8 The State announced before trial that it would only proceed on the first two counts. Count I charged Warner with unlawful use or possession of a weapon by a felon based on his machete and prior felony conviction. 720 ILCS 5/24-1.1(a) (West 2018). Count II charged Warner with aggravated assault based on the victim's status as a CTA employee (720 ILCS 5/12-2(b)(7) (West 2018)) and sought to elevate the Class A misdemeanor to a Class 4 felony because Warner

was armed with a machete during the commission of the assault (720 ILCS 5/12-2(d) (West 2018)).

¶ 9        At trial, the State presented the testimony of Marvin Ellis, the CTA customer service assistant, who encountered Warner during his regular shift at the Cicero Green Line station. Ellis testified that he was 52 years old and married with a five-year-old son. He was convicted of driving on a revoked or suspended license six years ago. He has worked in his current position for the past four years.

¶ 10       Ellis testified that his encounter with Warner began while he was assisting a regular rider he called "Cece." Ellis was seated inside an enclosed kiosk and speaking to Cece through the glass windows. Warner pushed in front of Cece and was "kind of aggressive." When he asked Warner to wait his turn, Warner got upset and began swearing at him. Meanwhile, Cece began arguing with Warner, who threw his gym bag to the floor. Ellis walked outside his kiosk to intervene as Cece left the station. Warner pointed a finger in his face and said, "I will whoop your ass." A young man approached and tried to calm Warner down.

¶ 11       According to Ellis, that is when Warner retrieved a machete from his gym bag while saying what he would do to him. Ellis retreated inside his kiosk and called his controller to send police there because he felt threatened. While Ellis was on the phone, Warner cracked the kiosk window with his machete and continued saying he would hurt Ellis. Meanwhile, Cece returned with a folding knife to confront Warner. Ellis told her to leave because Warner was waving a machete and that police were on their way. Ellis stayed inside his kiosk and waited until police officers arrived and arrested Warner. He identified People's exhibit 1 as the machete Warner pulled out from his gym bag and cracked the kiosk window with.

¶ 12    The State played the surveillance video of the incident while Ellis narrated. The video showed Ellis speaking to Cece from inside his kiosk and Warner stepping in front of her. The video also showed Warner tossing his gym bag next to the soda machine, which blocked portions of the events from the camera's view. The soda machine obstructed the moment Warner allegedly pulled a machete out of his gym bag, but he emerges holding the machete in his right hand. The soda machine also blocked the moment Warner cracks the kiosk window with the machete; Ellis claimed he was on the phone with his controller at the time. A young man tries to calm Warner down and shows Warner "he cut his hand with the knife." Defense counsel objected but the court did not rule on the objection.

¶ 13    Ellis resumed his narration, describing the moment he tells his controller that Warner cracked the kiosk window. The surveillance video then shows Warner bending down doing something with his bag. Ellis presumed Warner was putting his machete away. Afterwards, Warner continued to say he was going to catch up with Ellis again and that he was going to stay there until police arrived.

¶ 14    On cross-examination, Ellis acknowledged noticing Warner and the young man at the Ventra machine as he was talking to Cece about Ventra cards. Warner and the man did not appear to have any difficulties with the Ventra machine. Ellis also acknowledged that after he alerted Cece that Warner had a machete, she argued with Warner briefly before leaving. Ellis stated he did not inform the police officers about that moment.

¶ 15    The arresting officer testified next and the footage from his body camera was published to the jury. Officer Clifton Turner stated that upon his arrival, he heard someone speaking loudly and saw Warner yelling at Ellis. Warner "was positioned outside the kiosk where the CTA

employee was in." Specifically, Warner was standing beside a vending machine and a backpack. And there was another person standing on the opposite side of the turnstiles near the kiosk.

¶ 16    According to Officer Turner, Warner seemed agitated but complied with instructions to lay down so he could be detained. Other officers arrived and one of them checked the backpack and found a long blade inside a case. Turner identified People's exhibit 1 as that long blade. He also testified that he spoke with Ellis about what happened and saw a "visible divot or dent" in the kiosk window.

¶ 17    On cross-examination, Turner acknowledged that when he first arrived, Warner was talking to Ellis and another person. When asked if he interviewed that person, Turner stated he only spoke briefly with him. Turner saw the man cradling a bloody hand and asked if he was hurt, but he did not respond. Turner also acknowledged he did not photograph the damaged kiosk window or find any missing pieces of glass.

¶ 18    Following Officer Turner's testimony, the parties stipulated that the CTA is a municipal corporation in Chicago, Illinois, and that Warner had a prior conviction qualifying him for background-based Class X sentencing. Then the State rested, and the court dismissed the jury for the day.

¶ 19    The court held a jury instruction conference the next day. Both parties suggested non-pattern jury instructions for the aggravated assault charge because the Illinois Pattern Jury Instructions do not provide an instruction for an aggravated assault charge that is enhanced from a misdemeanor to a felony, by a defendant's use of a Category II weapon as in this case. Warner objected to People's instruction number 11, the issues instruction for aggravated assault, which was a modified version of Illinois Pattern Criminal Jury Instruction 11.04:

"To sustain the charge of aggravated assault, the State must prove the following propositions:

First Proposition: That the defendant knowingly placed Marvin Ellis in reasonable apprehension of receiving a battery; and

Second Proposition: That the defendant knew Marvin Ellis to be an employee of a municipal corporation, to wit: Chicago Transit Authority, engaged in the performance of his authorized duties as such employee; and

Third Proposition: That the defendant was armed with a dangerous weapon, to wit: machete.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty."

¶ 20 Warner argued the first proposition above did not mirror the italicized language in the indictment:

"Robert Warner committed the offense of aggravated assault in that he, without lawful authority, knowingly engaged in conduct which placed Marvin Ellis in reasonable apprehension of receiving a battery, *to wit:*

*Robert Warner threatened Marvin Ellis and swung at him*, and Robert Warner knew Marvin Ellis to be an employee of the State of Illinois, a municipal corporation therein, or a political subdivision thereof, to wit:

An employee of the Chicago Transit Authority of the City of Chicago, and Marvin Ellis was performing his official duties at the Chicago Transit Authority Green Line Station, and Robert Warner was armed with a Category II weapon, a knife with a blade of at least three inches in length, or other dangerous or deadly weapon of like character, to wit:

A machete, during the commission of the assault, in violation of Chapter 720 Act 5 Section 12-2(b)(7) of the Illinois Compiled Statutes Act 1992 as amended."

Yet Warner submitted a modified instruction with the same language proposed by the State: "That the defendant was armed with a dangerous weapon, to wit: machete." Warner's proposed instruction only differed from the State's version by adding a third and fourth proposition regarding his theory of self-defense and necessity. The trial court instructed the jury using the State's version of aggravated assault. Then Warner unsuccessfully moved for a directed verdict and rested without presenting testimony.

¶ 21 During deliberations, the jury sent a note asking whether "knowingly" and "intent" are synonymous, and what would happen if they cannot reach a unanimous decision on one or both counts. The court responded by giving the definitions of those terms, and when the jury sent a note seeking a response to its second question, the court asked them to continue deliberating. Upon further deliberation, the jury found Warner not guilty of unlawful use or possession of a weapon by a felon, but guilty of aggravated assault.

¶ 22 Warner filed a motion for a new trial, arguing the court erred when it denied his requested jury instructions. The trial court denied Warner's motion and proceeded to sentencing.

¶ 23    In aggravation, the State argued that Warner was "extendible on the Class 4" and asked the trial court to sentence him "in the extendible range for the Class 4." According to the State, Warner had six prior felony convictions, the most recent in 2012 for attempted burglary in Nevada.

¶ 24    Warner argued, in mitigation, the surveillance video did not show him brandishing a knife directly towards Ellis and there was no testimony from Ellis about a specific time when he felt in fear. Warner also highlighted his volunteer work, church activities, and continuing education.

¶ 25    Upon consideration, the trial court sentenced Warner to five years' imprisonment followed by one year of mandatory supervised release. The court explained to Warner:

> "The usual sentencing range for aggravated assault is probation,
> conditional discharge, fine of up to $25,000, period of time in the penitentiary
> between one and three years. However, because of this prior conviction from
> Nevada in 2012 for the offense of attempt burglary, that conviction within less
> than ten years permits this Court to consider an extended term sentence of up to
> six years in the Illinois Department of Corrections plus one year mandatory
> supervised release."

¶ 26    Warner then filed a motion to reconsider his sentence. He argued the sentence was excessive and penalized him for choosing a jury trial, and the court improperly considered in aggravation matters implicit in the offense. The court denied Warner's motion.

¶ 27    This appeal follows.

¶ 28                                    ANALYSIS

¶ 29                            Sufficiency of the Evidence

¶ 30     Warner first contends the State failed to prove him guilty beyond a reasonable doubt because the surveillance video did not corroborate Ellis's testimony about being threatened with a knife; rather, he only took his knife out to defend against Cece. Because the surveillance video does not show Ellis being threatened with a knife, Warner concludes "the record shows that [he] did not use a knife to assault Ellis."

¶ 31     When a defendant challenges the sufficiency of the evidence, our review is limited to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Our purpose is not to retry the defendant. *People v. Castillo*, 372 Ill. App. 3d 11, 20 (2007). Rather, it is the responsibility of the trier of fact to determine the credibility of witnesses and the weight of the evidence, to resolve any conflicts and inconsistencies in the evidence, and to draw reasonable inferences from the evidence. *People v. Taylor*, 2015 IL App (1st) 131290, ¶ 11. We must resolve all reasonable inferences in favor of the State unless the only reasonable inference from the record supports the defendant. *People v. Shaw*, 2015 IL App (1st) 123157, ¶ 19. Moreover, the positive and credible testimony of a single witness is sufficient to support a conviction. *Id.* ¶ 20.

¶ 32     The State responds that nothing in the surveillance video contradicts Ellis's testimony about being threatened by Warner with a machete. We agree.

¶ 33     The aggravated assault statute provides that a person commits aggravated assault when he knowingly engages in conduct that places another in reasonable apprehension of receiving a battery (720 ILCS 5/12-1(a) (West 2018) (assault statute)) and knows the victim is "an employee of the State of Illinois, a municipal corporation therein, or a political subdivision thereof, performing his or her duties." 720 ILCS 5/12-2(b)(7) (West 2018). Under subdivision (d),

labeled "Sentence," the statute states that aggravated assault as defined in subdivision (b)(7) is a Class A misdemeanor except where a Category II weapon is used in the commission of the assault, which is a Class 4 felony. 720 ILCS 5/12-2(d) (West 2018).

¶ 34    Viewing the evidence in the light most favorable to the prosecution, we find that the surveillance video does not contradict but, rather, corroborates Ellis's testimony about being threatened with a machete. Ellis testified that his encounter with Warner began while he was helping Cece with Ventra cards. When Warner pushed in front of Cece with his own questions, Ellis asked him to wait his turn. Warner responded by swearing at Ellis. Then, Cece started arguing with Warner, who threw his gym bag to the floor. Ellis walked outside his kiosk to intervene as Cece left the station. Warner pointed a finger in Ellis's face and said, "I will whoop your ass." Although a young man tried to calm Warner down, Warner retrieved a machete from his gym bag while saying what he would do to Ellis. Ellis retreated inside his kiosk and asked his controller to send police there because he felt threatened by Warner. While Ellis was on the phone, Warner cracked the kiosk window with his machete and continued saying he would hurt Ellis. When Cece returned with a folding knife to confront Warner, Ellis told her to leave because Warner was waving a machete, and police were on their way. Cece, however, argued with Warner briefly before leaving the station. Ellis stayed inside his kiosk until police officers arrived and arrested Warner. Officer Turner testified he saw a dent in the kiosk window and that a fellow officer found the machete in Warner's bag.

¶ 35    Although the surveillance video does not show when Warner allegedly retrieved the machete from his bag and cracked the kiosk window, that does not necessitate the conclusion he did not use a knife to assault Ellis or establish that he only pulled out his knife to defend against

Cece. Rather, the testimonies of Ellis and Officer Turner, combined with the surveillance video, support a reasonable inference that Warner threatened to hurt Ellis with a machete.

¶ 36　　Thus, Warner's reliance on *People v. Shaw* is inapposite. There, a surveillance video and police testimony contradicted the robbery victim's testimony that the defendant had a gun. *Shaw*, 2015 IL App (1st) 123157, ¶ 26. No gun was found by the officers and the surveillance video did not show the defendant had an opportunity to hide a gun. *Id.* ¶¶ 22-23. Under those circumstances, the appellate court stated it was entitled to give less deference to a trial court's determinations of fact when based on evidence other than live testimony. *Id.* ¶ 29. Here, unlike in *Shaw*, the surveillance video, police testimony, and recovered machete corroborate Ellis's testimony that Warner threatened to hurt him with a machete.

¶ 37　　Viewing the evidence in the light most favorable to the prosecution, we cannot say *no* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt; therefore, the evidence is sufficient to prove Warner guilty of aggravated assault.

¶ 38　　　　　　　　　　　　　　　　Jury Instructions

¶ 39　　Warner next contends he was denied a fair trial because the trial court erred in instructing the jury on the charge of aggravated assault. Warner argues the trial court erred by instructing the jury on the third proposition: that he was *armed with* a dangerous weapon while committing an assault, to wit a machete. According to Warner, the third proposition should have stated that he *used* the machete during the commission of the assault, which is an essential element of the charged offense. Warner admits he failed to preserve this issue by failing to object or tendering an alternative to the modified jury instruction offered by the State. He asks us to consider the issue as plain error.

¶ 40    As mentioned, the Illinois pattern jury instructions do not provide an instruction for an aggravated assault charge that is enhanced by Warner's use of a Category II weapon as in this case. Therefore the court was required to use a non-pattern jury instruction for the aggravated assault charge. Both parties suggested non-pattern jury instructions for the aggravated assault charge. And Warner submitted a version including the exact language he now challenges: "That the defendant was armed with a dangerous weapon, to wit: machete."

¶ 41    "Whether we couch it in terms of 'waiver' or 'invited error,' plain-error review of that action is not available." *People v. Smith*, 2019 IL App (1st) 161246, ¶ 51 (citing *People v. Stewart*, 2018 IL App (3d) 160205, ¶ 20 and *People v. Boston*, 2018 IL App (1st) 140369, ¶ 109). Warner waived the jury-instruction argument because he tendered a jury instruction with the same language proposed by the State, and he invited any error by doing so. *See id.* ¶¶ 49-51 (citing *People v. Patrick*, 233 Ill. 2d 62, 76-77 (2009) (the defendant waived any objection to the jury instruction by proffering the allegedly erroneous instruction) and *People v. Carter*, 208 Ill. 2d 309, 319 (2003) ("the doctrine of 'invited error' precluded the defendant from challenging an action of the trial court that the defendant, himself, requested"); see also *People v. Parker*, 223 Ill. 2d 494, 508 (2006) (the defendant cannot directly attack a jury instruction tendered by the defense; the defendant invited any error by doing so). Accordingly, we decline to review this issue.

¶ 42                          Ineffective Assistance of Trial Counsel

¶ 43    Warner also contends that trial counsel was ineffective for failing to object to irrelevant testimony that another person was injured during the incident. Warner argues he was prejudiced by the introduction of evidence that the young man who tried to calm him down was cut with his

knife. According to Warner, "it is likely that the jury may have acquitted [him] of all counts had they not heard that someone was hurt as a result of [his] actions."

¶ 44    We find that the failure of trial counsel to object to that testimony does not constitute ineffective assistance of counsel because it did not prejudice Warner. *People v. Davis*, 285 Ill. App. 3d 1039, 1045 (1996). A reviewing court need not decide if counsel's performance was deficient before it considers any prejudice suffered by the defendant because of the alleged deficiency. *Id.* at 1046. To show prejudice, the defendant must show there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The overwhelming evidence of Warner's guilt, as discussed, including a video recording of the offense precludes him "from being capable of showing that there was a reasonable probability that the outcome of the case would have been different" had counsel objected to the irrelevant testimony. *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 74.

¶ 45                                              CONCLUSION

¶ 46    Accordingly, we affirm defendant's aggravated assault conviction and his five-year sentence of imprisonment.

¶ 47    Affirmed.