2022 IL App (1st) 210249

FIRST DISTRICT
SIXTH DIVISION
September 2, 2022

No. 1-21-0249

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CF 00686 (01) |
| | ) | |
| CHARLIE BASS, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Mikva and Justice Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant Charlie Bass appeals the second-stage dismissal of his postconviction petition alleging ineffective assistance of counsel in plea negotiations and at trial. Bass's chief claim is that his counsel never met with him privately and misinformed him about the State's evidence. Bass alleges that as a result of counsel's failure, he rejected a 20-year plea offer and, instead, proceeded to trial where a jury found him guilty of first degree murder. The circuit court later sentenced Bass to 55 years in prison (30 years for first degree murder plus 25 years for personally discharging a firearm).

¶ 2   Because we conclude that Bass has alleged a substantial showing of a constitutional violation on his claim related to counsel's failure to privately consult and to inform him of the evidence against him, we reverse the dismissal of those claims and remand for an evidentiary hearing. As to the other claim dismissed, we affirm.

¶ 3                                           I

¶ 4       On the afternoon of July 26, 2009, Netisha Stroger overheard her live-in boyfriend, Charlie Bass, talking on the phone with his other girlfriend, Rita Mullins. As it turns out, Mullins would visit Bass almost every day while Stroger was at work. Stroger told Bass that she would not write, call, or visit him in jail on his pending burglary case or send him money.

¶ 5       That evening, Bass went out with his cousin, Tierre Randle, and together they spent the evening drinking and driving around Chicago's west side. When Bass returned home, he said he found Stroger unconscious on the floor of the locked apartment, bleeding from the mouth and nose. Stroger had been shot.

¶ 6       Bass made three phone calls to 911 starting around 3:15 a.m. Curiously, phone records show that Bass called Randle (at 3:12 a.m. and 3:14 a.m.) before making the first call to 911. When Chicago police arrived around 3:25 a.m., Randle was sitting in a white Cadillac parked in the alley behind the apartment.

¶ 7       Surveillance footage of imperfect quality from area security cameras showed a light color vehicle arriving in the alley at 2:45 a.m. A person exited the passenger side of the vehicle and ran toward the Bass-Stroger apartment. At 3:15 a.m., surveillance footage also showed that the back lights of the Dodge Charger that Bass shared with Stroger flashed as if activated by a remote. A person could be seen approaching the driver's side door and then proceeding toward the apartment.

¶ 8       Later that day, Stroger's sister found a handgun underneath the driver's seat of the Dodge Charger. Testing confirmed that the bullet that killed Stroger came from that gun. Bass's left hand tested positive for gunshot residue.

¶ 9    Based on this and other evidence, a jury convicted Bass of first degree murder. 720 ILCS 5/9-1 (West 2008). The circuit court sentenced Bass to 30 years in prison for first degree murder plus 25 years for personally discharging a firearm, for a total sentence of 55 years. On direct appeal, we affirmed. *People v. Bass*, 2015 IL App (1st) 130904-U.

¶ 10    Bass subsequently petitioned for postconviction relief, asserting ineffective assistance of counsel. 725 ILCS 5/122-1 (West 2014). The circuit court advanced his petition to the second stage, and the State moved to dismiss. After briefing and argument, the circuit court dismissed the petition, and this timely appeal followed. Ill. S. Ct. Rs. 606, 651 (eff. July 1, 2017).

¶ 11                                                         II

¶ 12    Bass contends that the circuit court erred in dismissing his petition at the second stage because he properly alleged two grounds for ineffective assistance of counsel. First, he contends that trial counsel's failure to consult with him privately resulted in a lack of meaningful discussion regarding the State's evidence. He asserts that counsel misinformed him about the order of the phone calls to 911 and mischaracterized the significance of Mullins's testimony. This caused him to turn down a plea offer from the State. Second, Bass challenges counsel's failure to call Grace Ross at trial.

¶ 13    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a means for individuals to assert that their criminal convictions were the result of a substantial denial of their rights under the state or federal constitutions. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009) (citing 725 ILCS 5/122-1 *et seq.* (West 2006)).

¶ 14    In a noncapital case, a postconviction proceeding contains three stages. *People v. Tate*, 2012 IL 112214, ¶ 9. At the first stage, the court must determine whether the petition is " 'frivolous

or is patently without merit.' " *Hodges*, 234 Ill. 2d at 10 (quoting *People v. Edwards*, 197 Ill. 2d 239, 244 (2001), and citing 725 ILCS 5/122-2.1(a)(2) (West 2006)). If the petition survives the first stage, it then moves to the second stage, where the circuit court must determine whether the petition makes "a substantial showing of a constitutional violation." *Edwards*, 197 Ill. 2d at 245-46 (citing *People v. Coleman*, 183 Ill. 2d 366, 381 (1998)). The State may then file a motion to dismiss, and the court may hold a hearing on that motion. *People v. Johnson*, 2021 IL 125738, ¶ 27. At the third stage, the trial court conducts an evidentiary hearing. *People v. Makiel*, 358 Ill. App. 3d 102, 104 (2005) (citing 725 ILCS 5/122-6 (West 2000)). When a postconviction petition is dismissed without an evidentiary hearing, the trial court's decision is reviewed *de novo*. *People v. Jones*, 2021 IL App (1st) 182392, ¶ 39.

¶ 15    In evaluating a motion to dismiss, the trial court is concerned only with determining whether the petitioner's allegations sufficiently show a constitutional infirmity that would necessitate relief under the Post-Conviction Hearing Act. 725 ILCS 5/122-2 (West 2014). "[A]ll well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." (Internal quotation marks omitted.) *People v. Snow*, 2012 IL App (4th) 110415, ¶ 15.

¶ 16    Here, Bass argues that he was denied effective assistance of counsel in violation of the sixth amendment. See U.S. Const., amend. VI. Under the familiar standard for evaluating claims of ineffective assistance established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a defendant must show that counsel's performance was deficient and that the defendant suffered prejudice as a result. To establish deficient performance, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. "[A] court

must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

¶ 17 To establish prejudice under *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a plea, our supreme court has held that the defendant "must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer." *People v. Hale*, 2013 IL 113140, ¶ 18.

¶ 18                    A. Counsel's Failure to Conduct a Private Consultation

¶ 19 Bass alleges that his trial counsel never held a private consultation with him—either in person or over the phone. All discussions between Bass and counsel took place in the holding cell behind Judge Kazmierski's courtroom, with other detainees present. Bass contends that this failure led him to be misinformed regarding the evidence against him: (1) counsel told him that he phoned 911 before he phoned his cousin when, in fact, Bass phoned his cousin twice before calling 911, and (2) counsel mischaracterized the significance of Mullins's likely testimony by describing it as "more helpful than hurtful."

¶ 20 A hallmark of the attorney-client relationship in our adversarial system is full and open communication between a client and his lawyer. This relationship of trust and confidence allows the client to obtain informed legal advice, and it provides the attorney with the information necessary to provide competent representation. Virtually every role a lawyer fulfills depends on communication with the client, be it as an advisor, an advocate, a negotiator, or an evaluator. Ill. R. Prof'l Conduct (2010), Preamble, ¶ 2 (eff. Jan. 1, 2010). The Illinois Rules of Professional Conduct further amplify the need for communication and confidentiality. Ill. R. Prof'l Conduct

(2010) R. 1.4 cmt. 1 (eff. Jan. 1, 2016) ("Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation."); R. 1.6(e) (eff. Jan. 1, 2016) ("A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.").

¶ 21    Running hand in glove with these professional duties is the attorney-client privilege, the oldest of the common law evidentiary privileges. 8 John H. Wigmore, Evidence in Trials at Common Law § 2290, at 542-43 (McNaughton rev. ed. 1961). Its purpose is to encourage free and open communication between client and lawyer, thus promoting informed, effective representation. See, *e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.").

¶ 22    The professional need for confidential communication is perhaps greatest in a criminal representation where a client, with his liberty at stake, may well need to share incriminating, or at least embarrassing, information with his counsel. And counsel seeking to advise and to advocate must deliver an unvarnished assessment of his client's prospects. *Cf.* ABA Criminal Justice Standards, Defense Function, Standard 4-2.2 (4th ed. 2017), https://www.americanbar.org/groups/ criminal_justice/standards/DefenseFunctionFourthEdition (last visited Aug. 30, 2022) [https://perma.cc/4AGW-3N6Q] (delineating the need for "confidential and unmonitored" telephone calls and in-person meetings between defense counsel and his detained client). A thorough, meaningful discussion between attorney and client about discovery, trial strategy, and legal options requires privacy.

¶ 23    Can we say that counsel's failure to have a one-on-one, confidential meeting with his client falls "below an objective standard of reasonableness"? That all depends on context: The "[a]dequacy of communication depends in part on the kind of advice or assistance that is involved." Ill. R. Prof'l Conduct (2010) R. 1.4 cmt. 5 (eff. Jan. 1, 2016). This is not a case where there was an objective, measurable failure to communicate. See *People v. Mujica*, 2016 IL App (2d) 140435, ¶ 10 (counsel allegedly failed to communicate to the State the defendant's desire to accept the plea); *People v. Trujillo*, 2012 IL App (1st) 103212, ¶¶ 9-10 (counsel allegedly failed to convey the State's plea offer); see also *People v. Smith*, 268 Ill. App. 3d 574, 578-79 (1994) (counsel failed to communicate with the defendant and concealed reports). Indeed, Bass's petition alleges communication: "All discussions between the petitioner and trial counsel regarding the evidence in the case were in the bullpen behind Judge Kazmierski's courtroom, where other detainees were present." Further, the petition alleges that Bass rejected a plea offer. So, Bass and his counsel certainly communicated.

¶ 24    The deficiency in counsel's performance, if any, was in failing to secure a private setting for a discussion with Bass. Given the significance of the murder charge Bass faced and the nature of the evidence against him—which included video surveillance footage, phone calls, and text messages—counsel's alleged failure to have a confidential consultation (either by phone or in person) fell below an objective standard of reasonableness. It would seem practically impossible to have a meaningful review of the discovery in this case in a holding cell with other detainees present. See, *e.g.*, *Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977) ("the Sixth Amendment's assistance-of-counsel guarantee can be meaningfully implemented only if a criminal defendant knows that his communications with his attorney are private" (internal quotation marks omitted)).

Indeed, the presence of the detainees threatened to compromise any privileged communication between Bass and his counsel. Based on the relative complexity of the representation stemming from the charge and nature of the evidence, counsel's performance was deficient in failing to hold a private meeting with his client. This, however, does not establish a categorial rule, and what constitutes appropriate consultation will vary depending on the case.

¶ 25    But was there any prejudice to Bass? To establish prejudice where a defendant rejects a plea offer, a defendant must demonstrate (1) a reasonable probability that he would have accepted the plea offer but for counsel's deficient performance and (2) a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. See *Hale*, 2013 IL 113140, ¶ 19; see also *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012). Here, Bass would also need to establish that the plea offer was ever extended because the State argued below that "there's no support for an offer being made." This highlights the difficulty in analyzing prejudice at the second stage involving a rejected plea because, unlike an ineffective assistance claim arising from performance at trial, there typically is no record of plea negotiations. The absence of a record makes it particularly challenging to evaluate the consequence of counsel's supposed deficiencies. After all, "[t]he dismissal of a postconviction petition is warranted at the second stage of the proceedings only when the allegations in the petition, *liberally construed in light of the trial record*, fail to make a substantial showing of a constitutional violation." (Emphasis added.) *People v. Hall*, 217 Ill. 2d 324, 334 (2005).

¶ 26    In one of the few Illinois Appellate Court opinions addressing this analytic quandary, Justice Steigmann wrote that the absence of an objective benchmark (*i.e.*, a record) virtually compels an evidentiary hearing if the allegations in the petition are well-pled:

"[P]ostconviction challenges based on a claim that the defendant was denied his constitutional right to the effective assistance of counsel during guilty-plea negotiations with the State are almost always based on matters that occur *de hors* the record. Thus, absent a pretrial hearing in which the trial court could make a record regarding guilty-plea negotiations by asking questions of the parties on the record \*\*\*, the court must take all well-pleaded facts as true. When those well-pleaded facts allege a substantial constitutional violation—as in this case—the court must advance the postconviction petition to the third stage of postconviction proceedings for an evidentiary hearing." *People v. Williams*, 2016 IL App (4th) 140502, ¶ 44.

In *Williams*, the defendant had alleged that his counsel failed to accurately inform him of potential penalties and that he was prejudiced in that, if he knew he was facing the possibility of consecutive sentences, he would have accepted the State's 18-year guilty plea offer. *Id.* ¶ 43. Similarly, where counsel failed to advise a defendant of a firearms enhancement and principles of accountability, the appellate court found a substantial showing of prejudice where a blind plea would have subjected the defendant to a maximum sentence of 30 years versus the 50-year sentence imposed after trial. *People v. Davis*, 2019 IL App (3d) 160082-U, ¶¶ 5, 25. A court can consider the disparity between "the sentence a defendant faced" and a plea offer as objective evidence of prejudice supporting a defendant's claim. *Hale*, 2013 IL 113140, ¶ 18.

¶ 27    Bass's complaint is not as concrete as being misadvised of a sentencing range, but it goes to being misadvised of the significance of the evidence against him—the order of the 911 calls and the significance of Mullins's anticipated testimony. Specifically, Bass claims that he would have accepted the State's 20-year plea rather than proceeding to trial (and receiving a 55-year sentence) if counsel had thoroughly and properly communicated the evidence against him. The State argues that Bass, since he placed the phone calls, certainly knew the order. Perhaps this is so, but the setting in which Bass met his counsel—a holding cell with other detainees present—made it impossible for Bass, privately, to correct or to question his counsel about the evidence. The very able trial judge questioned Bass's "but for" assertion that if he knew the correct order of the phone calls, he would have accepted the State's supposed plea offer because there was an abundance of other incriminating evidence. How could this one piece of evidence *really* be material to the plea decision when there was so much other damning evidence? But that analysis approaches a credibility determination more appropriately made at an evidentiary hearing than on second-stage dismissal. And as our supreme court has cautioned, a showing of prejudice at an evidentiary hearing must encompass more than "a defendant's own subjective, self-serving testimony." (Internal quotation marks omitted.) *Id.* In sum, in light of Bass's unrebutted allegations and the absence of anything in the record to contradict those allegations, we conclude that the circuit court erred in dismissing these claims in Bass's petition without holding an evidentiary hearing.

¶ 28                    B. Counsel's Failure to Call Grace Ross

¶ 29    Finally, Bass contends that his counsel was ineffective in failing to call Ross—another girlfriend of Bass. Bass claims Ross's testimony would have fostered reasonable doubt and negated his supposed financial motive for killing Stroger. At trial, the State argued that Bass's

motive for killing Stroger was that "she would not call him, send him money or visit him (at) jail because she found out about his relationship with Mullins." However, Ross specified in her affidavit that she had $14,000 available for Bass and for trial counsel's legal fees. Defendant argues that trial counsel's failure to call Ross as a witness or otherwise investigate the potential value of her testimony to his case establishes ineffective assistance of counsel.

¶ 30     Attorneys have an obligation to explore all readily available sources of evidence that might benefit their clients. *Makiel*, 358 Ill. App. 3d at 107. Where a defendant's attorney is aware of exculpatory evidence and does not present it, counsel can be deemed ineffective. *People v. King*, 316 Ill. App. 3d 901, 915 (2000) (citing *People v. O'Banner*, 215 Ill. App. 3d 778, 790 (1991)). The decision to call witnesses is one of trial strategy generally immune from ineffective assistance of counsel claims, but counsel's failure to call witnesses who would have contradicted the State's evidence and supported the defense can indicate deficient performance. *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 48.

¶ 31     In this case, choosing not to call a witness who was romantically involved with Bass was strategic, particularly when the testimony only stood to negate a single potential motive. Moreover, Bass states in his petition that counsel and Ross had met multiple times and that she was even paying counsel's fees. Counsel was aware of Ross and her relationship to Bass, and he made the reasoned and conscious choice not to call Bass's third girlfriend. Bass therefore fails to overcome the presumption that the challenged action was within the wide range of reasonable professional assistance.

¶ 32                                                    III

¶ 33     In summary, the circuit court erred in dismissing Bass's postconviction petition without an evidentiary hearing with respect to the allegations concerning counsel's failure to hold a private consultation in connection with the order of the 911 phone calls and the significance of Mullins's testimony. Accordingly, we remand the matter to the circuit court to hold a third-stage evidentiary hearing as to these claims. We affirm the circuit court's order dismissing Bass's petition in all other respects.

¶ 34     Affirmed in part and reversed in part; cause remanded.

*People v. Bass¸* 2022 IL App (1st) 210249

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 11-CF-00686(01); the Hon. Timothy J. Joyce, Judge, presiding. |
| **Attorneys for Appellant:** | Dean C. Morask, of Park Ridge, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Matthew Connors, and Noah Montague, Assistant State's Attorneys, of counsel), for the People. |