2025 IL App (1st) 231332-U

No. 1-23-1332

Order filed September 30, 2025.

First Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 08 CR 16682 |
| ANTOINE BOUZI, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Paul S. Pavlus, |
| | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

ORDER

¶ 1    *Held*: Defendant did not show a substantial violation of his constitutional rights at the second stage of postconviction proceedings where he failed to establish his posttrial and appellate attorneys were constitutionally ineffective. He also failed to establish his postconviction counsel was unreasonable. This court affirmed the judgment of the circuit court.

¶ 2    Following a bench trial, defendant Antoine Bouzi was found guilty of attempted murder,

then sentenced to 35 years' imprisonment. He now appeals from the second-stage dismissal of

his petition filed under the Post Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West

2022)). Defendant contends he established a substantial constitutional violation because his private posttrial counsel and appointed appellate counsel were ineffective for failing to argue private trial counsel's ineffectiveness for not investigating and calling two witnesses defendant claimed were exonerating. In the alternative, defendant maintains his postconviction counsel was unreasonable. We affirm.

¶ 3                                    BACKGROUND

¶ 4      Defendant, at age 19, was arrested and charged with the attempted murder of Evanston Police Officer Thomas Giese after two witnesses, Reginald Tate and defendant's cousin Issace Taylor, collectively saw defendant bearing a gun shortly before he shot at the officer in an Evanston gangway on July 29, 2008, between 2:30 a.m. and 3 a.m.[1] The State's case rested on the testimony of Evanston officers at the scene and the prior inconsistent statements, admitted as substantive evidence, of Tate and Taylor because they recanted in certain respects at trial.

¶ 5      In brief, according to Tate's statement, he saw defendant with a gun moments before he also saw defendant "crouch down," then run through the gangway followed by a uniformed police officer. Defendant was wearing a white t-shirt with hair braids and a do-rag. Seconds later, Tate heard gunshots. Tate had seen defendant with the same gun, a short chrome shotgun with a cock-back and black tape on the handle, two prior times in the recent past, when defendant tried to rob a pizza delivery man and also when he shot at several people. Tate identified defendant from a photo array. In addition to Tate's account, Taylor stated he saw defendant crouched and limping before the incident in question and knew he had a gun. Shortly thereafter, defendant ran

---

[1]The record on appeal consists of the common law record, report of proceedings, and two supplemental records, one of which contains the underlying report of proceedings for the trial. We note that portions of the trial record are missing and out of order. The trial exhibits also have not been included in the record on appeal. It's the appellant's burden to present a sufficiently complete record to support a claim of error, and any doubts arising from the record's incompleteness will be presumed against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

away, followed by a uniformed officer, and Taylor then saw defendant fall in the middle of the gangway and fire one shot in the air and one down towards the ground, although Taylor ultimately admitted at trial that the latter statement was offered only to help defendant as his cousin. After the shooting, defendant admitted to Taylor that the "gun just went off" before he threw it in front of a house. Taylor stated he had drunk a half liter of vodka the morning of the shooting and was drunk and sick. Taylor later told authorities he had been shot as a result of being a witness for the State.

¶ 6      Officer Giese, the victim in this case, testified that among a group in the street, he encountered a young black male, about 5 foot seven inches, 170 pounds and wearing long dark shorts, a white do-rag and a white t-shirt, with his back to Officer Giese. At the sound of "police," the youth crouched at the waist, walked sideways with his back to officers, then ran into the gangway with Officer Giese, who was fully uniformed, in pursuit. This individual then turned around and aimed the muzzle of his gun right at Officer Giese, firing twice from a distance of 20 to 25 feet. Police discovered a sawed-off shotgun with a handle wrapped in black electrical tape right near the house where the shooting occurred. This description of the gun was consistent with Tate's. Officer Giese later viewed nine individuals detained at the scene but eliminated them as the shooter based on their size, stature, and clothing.

¶ 7      It was also noted during the State's evidence that about six days after the shooting, Detective Nieman interviewed defendant, notifying him that he was a suspect in an open investigation. Defendant told Detective Nieman he had been out of town in Harvey, Illinois, the last two weeks with his girlfriend and that his uncle could confirm this. Detective Nieman then spoke with defendant's uncle by phone, and thereafter, moved defendant to lockup. Detective Nieman later confronted defendant, stating that eyewitnesses had placed him at the scene of the

shooting with a gun. An officer also testified to seeing defendant there just prior to the shooting, noting defendant was known to the police. Also, defendant's own stipulation entered in his case in chief placed him at the scene, thus revealing his asserted alibi to be false.

¶ 8     The trial court found Tate and Taylor's statements, together with the officers' testimony and other circumstantial evidence, more believable than their recantation testimony. The court found defendant provided a false alibi, thus disbelieving defense counsel's closing argument assertion that defendant merely presented the alibi for fear of being arrested. Accordingly, the court found defendant guilty as charged of two counts of attempted murder, aggravated discharge of a firearm, aggravated unlawful use of a weapon, and aggravated assault of a police officer. During trial, privately retained defense counsel, Robert F. Nemzin, represented defendant. After the guilty finding, Nemzin filed a motion for a new trial challenging the sufficiency of the evidence to sustain defendant's conviction.

¶ 9     Defendant, however, filed a *pro se* motion for a new trial alleging that his trial counsel was constitutionally ineffective for failing to object to the State's witnesses, precluding defendant and his parents from testifying, failing to call key witnesses to prove defendant's innocence, and failing to conduct a federal background check on the weapon.[2] In addition, defendant claimed he was denied his fifth, thirteenth, and fourteenth amendment rights and claimed counsel failed to fully investigate the case. Defendant then filed an amended motion for a new trial claiming Nemzin should have secured affidavits from witnesses who could verify defendant's "whereabouts" during the time he was seen with a gun. Defendant further claimed the alleged statement he gave police was false, trial counsel refused to present evidence on the

---

[2]Defendant wrote that he was "denied ineffective assistant counsel." Given his *pro se* status, we interpret that to mean he was denied effective assistance of counsel.

police officers' bias against defendant, and, again, counsel refused to allow defendant to testify. Defendant attached a number of affidavits from family members.

¶ 10     Relevant for the purposes of this appeal, in June 2009, defendant filed a "SECOND AMENDED MOTION FOR A NEW TRIAL," adding that four witnesses, including Julius Middleton and Larnell Kirkman, would provide sworn testimony regarding the shooting. In Middleton and Kirkman's attached affidavits, notarized in May 2009, they stated that on July 29, 2008, Taylor approached them in a park and admitted he was the shooter. Taylor was then wearing a white tank top, blue jeans, and "dirty braids." In the motion, defendant further alleged trial witnesses committed perjury, cell phone evidence was withheld, and again claimed his personal constitutional rights were violated, including under the sixth amendment. He claimed he was denied a fair trial by counsel's failure to interview witnesses in his community and school.

¶ 11     In May 2009, defendant also filed a motion to proceed *in forma pauperis* but repeated certain claims. He alleged Nemzin failed to obtain affidavits from witnesses who "tried to come foreword," and for the third time asserted Nemzin refused to allow defendant to testify on his own behalf. He claimed Nemzin owed his parents money for failing to represent him. Defendant filed a motion for additional discovery, as well.

¶ 12     Pursuant to defendant's request, Nemzin withdrew as trial counsel, and defendant hired a new private attorney, Robert Johnson, who ultimately filed a posttrial motion on October 8, 2009, titled "Amended Motion for New Trial."[3] The motion alleged, *inter alia*, that trial counsel failed to present defendant's alibi defense. In support, the motion stated defendant informed his trial counsel that he was at 1109 Pitner Street in Evanston at the time of the shooting. His mother, father, and sister would testify that he arrived at the same address between 12 a.m. and

_____

[3]Defendant hired another private posttrial attorney who represented him at several initial hearings and withdrew. Posttrial counsel Johnson then filed an appearance on his behalf.

12:30 a.m. The motion also challenged the sufficiency of the evidence. None of defendant's other *pro se* claims were included.

¶ 13    The cause proceeded to a hearing on November 18, 2009, wherein the court first observed that defendant, through Nemzin and acting *pro se*, had filed a number of posttrial motions. Newly retained posttrial counsel, Johnson, stated that defendant would proceed on the "Amended Motion for New Trial," after verifying that he had reviewed defendant's *pro se* posttrial pleadings and discussed them with defendant. The court asked defendant whether this was true. Defendant replied yes, and the court asked:  "Are you in agreement with your attorney as to how to proceed *** with regard to this particular motion? So, the only motion we are proceeding on is the amended motion for [a] new trial filed on your behalf by Mr. Johnson?" Defendant said yes, that was his understanding and he was in agreement with that plan. The court then ruled that defendant would be waiving his attorney-client privilege with respect to his trial counsel, Nemzin.

¶ 14    At the ensuing hearing, defendant's father, Antoine Bouzi Senior, first testified that he informed Nemzin prior to trial that defendant was with Antoine Senior at defendant's grandmother's house (1109 Pitner Street) starting around 11 p.m. on July 28, 2008. Around midnight on July 29, defendant, along with his mother, sister and Antoine Senior, returned to their home at 2261 N. Kedzie. Defendant went to his room, where he played video games. Antoine Senior saw defendant sleeping around 2:30 a.m. or 3 a.m. (notably, this is when the shooting occurred), and also saw him sleeping the next morning. Defendant left in the morning with his uncle. Antoine Senior informed Nemzin many times that he was available to testify as to these facts. On cross, Antoine Senior stated he never went to the police station after his son's arrest to inform them of the alibi. Defendant rested without testifying.

¶ 15     The State then called defendant's mother, Melissa Scott Bouzi, who testified that the day after the shooting, Detective Nieman called her. She told him that defendant was home with her when the shooting occurred. She similarly informed trial attorney Nemzin of the alibi. Yet, she did not go to the police station or the State's Attorney to report the same. Melissa likewise did not include the alibi in a letter she sent to the State's Attorney, chief judge of the circuit court, and a criminal court judge in April 2009. Rather, in that letter she informed the authorities that she had requested that Nieman call witnesses she believed to be credible. She did not inform the State's Attorney's representative, who called her, about the alibi. Melissa noted she was also an alibi witness for defendant for a *separate* shooting in which he was a suspect.

¶ 16     The State called Nemzin, an experienced criminal defense attorney, who testified that he represented defendant starting in September 2008 on two different shooting cases. Nemzin and defendant's family had meetings and repeatedly discussed trial strategy. Defendant's parents never told Nemzin they were alibi witnesses to the police shooting on July 29, 2008, despite having many opportunities to do so. Nemzin also discussed trial strategy with defendant, but he never told Nemzin of his alibi. Defendant's mother nevertheless told Nemzin she was an alibi witness in the *other shooting case* and relayed the details; with that and other supporting evidence, Nemzin filed an alibi defense.

¶ 17     As to this case, after reviewing the evidence, Nemzin determined that the best strategy was to raise reasonable doubt and impeach Tate and Taylor, who both recanted. He noted Taylor was intoxicated. He concluded the alibi defense would have been futile given that defendant had told police he was with his uncle in the south suburbs, which was untrue, and that the police already knew defendant and had placed him on the scene moments before the shooting. However, no police officer identified defendant with a gun in his hand when the shots rang out or

when the suspect ran. For this case, Nemzin reviewed police reports, visited the crime scene, where he took photos, obtained a report on Tate's brother, and his investigator interviewed Tate and Taylor. Taylor prepared a statement but was unwilling to sign it. The State asked if defendant's mother, father, family or "anyone else" gave Nemzin "the name of any other additional witness to investigate" beyond those mentioned. Nemzin replied, as to this shooting, no.

¶ 18 Following evidence and argument, the trial court found Nemzin a "highly credible witness." By contrast, the court found defendants' parents inconsistent, incredible, and the alibi fabricated after their trial loss. The judge stated, the alibi wasn't presented at trial because it was never given to Nemzin "because there is no real alibi to this particular case." The court thus rejected defendant's ineffective assistance of counsel claim. In response to defense counsel's posttrial arguments challenging the sufficiency of the evidence, the court rested on its earlier findings and ruling that the State had proved defendant guilty beyond a reasonable doubt. Accordingly, the court denied defendant's amended motion for a new trial, and sentenced defendant to a concurrent term of 35 years in prison on two counts of attempted murder, and a concurrent term of three years in prison on three counts of aggravated unlawful use of a weapon. The other counts merged.

¶ 19 Defendant filed a direct appeal again challenging the sufficiency of the evidence to sustain his conviction. He argued Tate and Taylor were impeached and incredible and the State failed to prove he had the requisite intent to commit attempted murder. This court affirmed. See *People v. Bouzi*, 2012 IL App (1st) 100431-U, *pla denied* No. 115104 (Jan. 30, 2013).

¶ 20 Defendant, *pro se*, subsequently filed a postconviction petition in October 2014, alleging that his trial counsel was constitutionally ineffective for failing to investigate, interview, and call

two witnesses, Kirkman and Middleton, to testify at his trial. Defendant thus essentially repeated the claim raised in his *pro se* "Second Amended Motion for a New Trial," which he had filed in May 2009 and abandoned posttrial. In his postconviction petition, he added that prior to trial Kirkman and Middleton told his mother that, on July 29, 2008, Taylor approached them in a park and admitted he was the shooter. Defendant asserted that he informed his trial attorney about this conversation (although he did not say when) and the witnesses, requesting that they be called. Defendant attached purported affidavits from Kirkman and Middleton (the same as attached to his earlier posttrial motion); he explained that his mother executed the affidavits in May 2009 and also in June 2014, detailing Taylor's admission. In their affidavits, neither Kirkman nor Middleton offered that they were available to testify at an evidentiary hearing, although defendant asserted they were in his petition. Defendant alleged, *inter alia*, that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. He also raised an actual innocence claim based on Kirkman and Middleton's affidavits.

¶ 21    Defendant's petition advanced to second-stage proceedings, where defendant was appointed postconviction counsel. Cycling through a number of Assistant Public Defenders (APD), the case ultimately landed with APD Nicole Nesbit in November 2018. Nesbit stated that she had been "in touch" with witnesses and was trying to secure their affidavits. She also stated that defendant's family informed her of "an issue with an officer in the case," and she needed to determine whether to obtain the officer's disciplinary records. Although at one point Nesbit represented that she was working on a "supplemental," she ultimately rested on defendant's *pro se* petitions and in 2022 filed an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate, although that certificate does not appear in the record.[4] In March 2023, APD Nesbit

---

[4] In March 2022, defendant, *pro se*, filed a typed copy of his previous petition.

filed a supplemental Rule 651(c) certificate stating that she had consulted with defendant to ascertain his claims of constitutional deprivation; she had examined the full record, trial file, court file, and exhibits in this case; she had interviewed relevant witnesses; she had unsuccessfully attempted to interview Taylor, and Tate was deceased; and defendant's *pro se* petition adequately set forth his claims of constitutional deprivation, and accordingly, she had not filed an amended petition.[5]

¶ 22    The State moved to dismiss the petition in May 2023. At the ensuing hearing in June 2023, the State argued defendant's ineffective assistance claim as to Kirkman and Middleton was barred because he had "forfeited" the claims. Postconviction counsel responded that defendant was also raising an ineffective assistance of appellate counsel claim regarding Kirkman and Middleton, thus overcoming forfeiture. The circuit court dismissed the petition on the State's motion at second-stage proceedings, and this timely appeal followed.

¶ 23                                  ANALYSIS

¶ 24    The Act provides a procedural mechanism by which a criminal defendant can assert that his federal or state constitutional rights were substantially violated in his original trial or sentencing hearing. 725 ILCS 5/122-1(a) (West 2022); *People v. Davis*, 2014 IL 115595, ¶ 13. The Act sets forth three stages of review for a petition. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first, without any input from the State, the circuit court may dismiss petitions that are "frivolous or * * * patently without merit," and if not then dismissed, the petition advances to the second stage, where the defendant with the option of counsel must make a substantial showing that his constitutional rights were violated in order to be entitled to a third-stage evidentiary

_____

[5]In ASA Nesbit's supplemental Rule 651(c) certificate, she also specifically stated, "[t]he Petitioner's signed *pro se* post-conviction petition was attached to the 651(c) previously filed on March 22, 2022." The clerk's records in the common law record note that ASA Nesbit filed a Rule 651(c) certificate on March 25, 2022.

hearing. *Id*. ¶ 34; 725 ILCS 5/122-2.1(a)(2), (b) (West 2022). When reviewing a motion to dismiss at the second stage, we accept as true all factual allegations that are not positively rebutted by the record. *People v. Agee*, 2023 IL 128413, ¶ 69; *People v. Lander*, 215 Ill. 2d 577, 586 (2005). We review the dismissal of a postconviction petition without an evidentiary hearing *de novo*. *Id*.

¶ 25    Defendant first contends he established a substantial constitutional violation because his private posttrial counsel and appointed appellate counsel were ineffective. To prevail on a claim of ineffective assistance of trial counsel under the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), a defendant must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.[6] *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). This two-prong test also applies to ineffective assistance of posttrial and appellate counsel claims. *People v. Golden*, 229 Ill. 2d 277, 283 (2008); *People v. Maury*, 2025 IL App (4th) 220887, ¶¶ 151, 159, disagreeing with *People v. Downs*, 2017 IL App (2d) 121156-C.. For the reasons to follow, defendant cannot establish his posttrial counsel was ineffective.

¶ 26    As stated, defendant, acting *pro se*, filed multiple posttrial motions asserting that his trial attorney was constitutionally ineffective in various regards. Relevant here, in defendant's second-amended motion for a new trial, defendant claimed counsel was ineffective for failing to interview witnesses in his community and school, and further asserted that witnesses Kirkman and Middleton would provide sworn testimony about the shooting. Their affidavits stated that Taylor admitted to them that he was the shooter. Pursuant to defendant's request, the court allowed new counsel to file an appearance after noting defendant's *pro se* allegations of

---

[6]We note that the *Strickland* rule applies to challenges to the effectiveness of both retained and appointed counsel. *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984).

ineffective assistance of trial counsel. Nemzin also requested to withdraw. Thus, the court implicitly found there was possible neglect of the case under *People v. Krankel*, 102 Ill. 2d 181 (1984).[7] See *People v. Jolly*, 2014 IL 117142, ¶ 29; *see also In re Johnathan T.*, 2022 IL 127222, ¶ 24 (noting the *Krankel* procedure "is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel").

¶ 27    Immediately before the resulting hearing, the court noted on the record the pending posttrial motions, including one from Nemzin, several *pro se* motions from defendant, and the "Amended Motion for New Trial," filed by defendant's new posttrial counsel. Johnson clarified that they were proceeding on only the "Amended Motion for New Trial," which he had prepared and which raised defendant's family alibi defense. Johnson further verified that he had reviewed defendant's *pro se* posttrial pleadings and discussed them with defendant, and defendant stated this was true. Defendant then stated he agreed with the "plan" to proceed on Johnson's motion alone, stating that was his understanding. Defendant has not alleged that Johnson threatened or coerced this decision.

¶ 28    Here, defendant's active participation in the proceedings and his personal on-the-record decision to withdraw his claim that trial counsel was ineffective for failing to call Kirkman and Middleton constitutes waiver. See *People v. Phipps*, 238 Ill. 2d 54, 64 (2010) (concluding the defendant intentionally waived a specific ineffective assistance of counsel claim raised posttrial); *People v. Blair*, 215 Ill. 2d 427, 444, fn. 2 (2005) (noting, waiver is the voluntary relinquishment of a known right); *People v. Houston*, 2024 IL App (3d) 210324, ¶ 23 (noting, waiver arises from

---

[7]The *Krankel* procedure applies equally to retained and appointed trial counsel. *In re Johnathan T.*, 2022 IL 127222, ¶¶ 43-44. We note that neither party makes any argument with regard to *Krankel* and the body of case law that has grown around it.

an affirmative act and is consensual). It also shows he acquiesced in proceeding on only the ineffective assistance claim involving his family alibi.

¶ 29   Acquiescence is a form of procedural default. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004); *People v. Stewart*, 2018 IL App (3d) 160205, ¶ 19. A party who acquiesces in proceeding in a given manner cannot show he was prejudiced by the proceeding. *Stewart*, 2018 IL App (3d) 160205, ¶ 19. Indeed,

"a party cannot complain of error which that party induced the court to make or to which that party consented. The rationale behind this well-established rule is that it would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings." *Swope*, 213 Ill. 2d at 217; see also *People v. Villareal*, 198 Ill. 2d 209, 227-28 (2001) (holding same).

¶ 30   Applying the law to these facts, allowing defendant to now assert posttrial counsel was deficient for declining to pursue a claim that defendant himself expressly withdrew would offend all notions of fair play. See *Villareal*, 198 Ill. 2d at 227. We observe that waiver can render *even a first-stage* petition legally meritless. *Blair*, 215 Ill. 2d at 442, 445 (noting an otherwise meritorious claim has no basis in law if *res judicata,* forfeiture, or waiver bar the claim). Surely, then, the waiver and acquiescence in this case served to render defendant's second-stage petition legally meritless. See *id*.; *compare People v. Thompkins*, 161 Ill. 2d 148, 177 (1994) (rejecting the defendant's request for an evidentiary hearing under the Act after finding the defendant acquiesced to counsel's representation that the defendant would not testify).

¶ 31   Even defendant's procedural default aside, we observe that Johnson's performance must be evaluated under the familiar principles of *Strickland*. See *Maury*, 2025 IL App (4th) 220887, ¶¶ 151, 159. *Strickland* teaches us that courts strongly presume counsel rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690; see also *People v. Peterson*, 2017 IL 120331, ¶ 80 (noting, the decision to call a defense witness is a matter of trial strategy at counsel's discretion after consulting with the defendant). Defendant has not overcome this presumption as to posttrial counsel's representation. In other words, if Kirkman and Middleton indeed had any valuable information to impart and were available to testify (although they did not state that in their affidavits, as later discussed), we presume posttrial counsel would have called them at the hearing. This is especially true where the record demonstrates that posttrial counsel reviewed all defendant's *pro se* posttrial pleadings and discussed them with defendant. See *People v. Rodriguez*, 2020 IL App (1st) 160030-UB, ¶¶ 60-61 (finding counsel was reasonable under *Strickland* after defendant agreed with counsel's judgment not to call an alibi witness).[8]

¶ 32     Moreover, trial counsel Nemzin testified at the posttrial hearing that no one, including defendant's family, gave him any other additional witnesses to investigate. Nemzin also testified that he had consulted with defendant and his family regarding the defense strategy and reviewed relevant materials. The trial court found Nemzin was a "highly credible witness," while defendant's parents were not.[9] Buttressing that testimony is Nemzin's December 18, 2008, answer to the State's discovery request, wherein he stated that there were no alibi witnesses at that time. Nemzin confirmed this orally to the trial court on December 19, 2008, while also filing an alibi defense in defendant's other pending criminal case. These facts contradict defendant's postconviction allegation that he told Nemzin about Kirkman and Middleton and Nemzin then declined to investigate them.

---

[8]Cited as persuasive authority under Illinois Supreme Court Rule 23(e)(1) (eff. June 3, 2025).
[9]Defendant had not challenged the factual findings or conclusions the court drew at the posttrial hearing.

¶ 33    A review of the trial record further reveals that Nemzin capably represented defendant. He presented a viable defense theory claiming that the only two eyewitnesses to implicate defendant were substantially impeached, inconsistent, and unreliable, and he noted the lack of physical evidence. Nemzin argued that no police officer could identify defendant as the shooter. Nemzin presented persuasive, detailed opening and closing arguments and skillfully and thoroughly cross-examined the State's witnesses. Through his cross, he emphasized that Taylor, who saw defendant run down the gangway with Officer Giese in pursuit, had consumed substantial alcohol at the time of the incident and was a drug user. All this record evidence supports that posttrial counsel acted reasonably in forgoing the ineffective assistance of counsel claim as to Kirkman and Middleton.

¶ 34    Dovetailing with this point, we observe that the witnesses' conclusory assertion that Taylor was the shooter runs counter to the evidence presented at trial. See *Blair*, 215 Ill. 2d at 453 (noting broad, unsupported, conclusory allegations in a postconviction petition are not allowed). The victim Officer Giese testified that Taylor, whom he knew, was not the shooter. Two other officers testified that they saw or detained Taylor just *after* Officer Giese chased the suspect and shots were fired. See *id*. Officer Jodie Hart testified that she searched Taylor at that time, and he did not have a weapon. Part of defendant's own stipulation, testimony by a witness (Dantrell Posey) offered in his case in chief, stated that before shots were fired, defendant ran but Taylor did not.[10] Tate also identified defendant as the individual with a gun moments before the shooting, not Taylor. The record contradicts defendant's factual assertion, rendering his claim legally meritless. See *Hodges*, 234 Ill. 2d at 16-17 (noting a claim is legally meritless where it is

_____

[10]We note the stipulation was exonerating in the sense that it stated the gunshots occurred so quickly after the subjects started running (including defendant) that the shooter was already in the alley.

contradicted by the record); *People v. Jefferson*, 345 Ill. App. 3d 60, 76 (2003) (noting if the claims made in a petition are positively rebutted by the record, they should not be taken as true).

¶ 35    Moreover, the affidavits are of questionable value given that defendant alleged *his mother* executed them. In their affidavits, Kirkman and Middleton never claimed they witnessed the shooting, that they could testify on defendant's behalf, or that they conveyed the information regarding Taylor to defendant's trial attorney. See *People v. Johnson*, 183 Ill. 2d 176, 190 (1998) (noting an affidavit must identify the availability of the alleged evidence); *People v. Jones*, 399 Ill. App. 3d 341, 366-67 (2010) (noting an affidavit is flawed where it fails to state the witness would testify to the facts alleged therein). This creates doubt regarding whether the exculpatory evidence exists. Even assuming Kirkman and Middleton were called to the stand, their purported testimony would constitute impeachment evidence at best. Based on the foregoing, we can't say that failing to call these witnesses was prejudicial or represented a deficiency under *Strickland*. See *People v. Joiner*, 2024 IL 129784, ¶ 37.

¶ 36    Simply stated, defendant hasn't shown the allegations in his petition are supported by the trial record or accompanying affidavits so as to establish a substantial showing of a constitutional violation worthy of an evidentiary hearing. See *Domagala*, 2013 IL 113688, ¶ 35; *People v. Enis*, 194 Ill. 2d 361, 376 (2000). His ineffective assistance of posttrial counsel claim must fail.

¶ 37    Defendant next contends he made a substantial showing that his appellate counsel was ineffective for failing to argue posttrial counsel's ineffective assistance. If the underlying issue has no merit, however, defendant did not suffer prejudice. *People v. Johnson*, 205 Ill. 2d 381, 406 (2002). Moreover, appellate counsel's choices concerning which issues to pursue are entitled to substantial deference. *Id*. Appellate counsel is not obligated to raise every conceivable issue on appeal, but rather, is expected to exercise professional judgment to select from the many

potential claims of error that might be asserted and succeed on appeal. *People v. English*, 2013 IL 112890, ¶¶ 33-34. We cannot impose on appellate counsel the obligation to pursue a claim that defendant himself expressly withdrew. Also damning to defendant's contention was the testimony of his trial counsel at the posttrial hearing. Again, Nemzin testified he investigated the case, and he was not given the names of additional witnesses. This was the record appellate counsel had before them. Given that, plus the aforementioned points, a claim on appeal that posttrial counsel was ineffective would not have succeeded, and we can presume appellate counsel believed the same.

¶ 38    Defendant alternatively contends postconviction counsel provided unreasonable assistance. There is no constitutional right to assistance of counsel in postconviction proceedings, as the right to counsel is a matter of legislative grace. *People v. Custer*, 2019 IL 123339, ¶ 30. Thus, postconviction petitioners are entitled only to the level of assistance guaranteed by the Act, which is a "reasonable" level. *Id*. To ensure a reasonable level of assistance, postconviction counsel must comply with the mandates of Rule 651(c). *People v. Addison*, 2023 IL 127119, ¶¶ 20-21.

¶ 39    Here, counsel filed a supplemental Rule 651(c) certificate, stating that she had consulted with defendant to ascertain his claims of constitutional deprivation, she examined the full trial record and interviewed relevant witnesses, and following that, she declined to make further amendments to defendant's *pro se* petition, which adequately set forth his claims. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Counsel's Rule 651(c) certificate created a rebuttable presumption that she provided defendant with reasonable assistance. *Addison*, 2023 IL 127119, ¶ 21. Defendant, who now bears the burden of overcoming that presumption, claims counsel failed to substantially comply with her Rule 651(c) duties because she did not amend the petition to allege

appellate counsel was ineffective for failing to argue *posttrial counsel's* ineffectiveness as to Kirkman and Middleton. See *id*. He claims this was a necessary amendment to overcome forfeiture.

¶ 40 Defendant is mistaken in several regards. First, a liberal reading shows this matter was included in defendant's petition and argued at the hearing. Second, to the extent counsel omitted specifying ineffective assistance of appellate counsel as to posttrial counsel, in particular, that is of no moment because defendant's posttrial waiver and acquiescence procedurally barred his claim. See *Phipps*, 238 Ill. 2d at 64. His proposed amendment would not have overcome the procedural bar, and in that sense, it was not necessary to adequately present defendant's contentions. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *People v. Huff*, 2024 IL 128492, ¶ 34 (finding, postconviction counsel's Rule 651(c) certificate created a presumption that no required amendments were available). Thus, defendant has not rebutted the Rule 651(c) certificate. The representations counsel made in her 651(c) certificate also find support in the report of proceedings. Defendant's unreasonable assistance claim fails.

¶ 41                                    CONCLUSION

¶ 42 For the reasons stated, defendant has failed to establish a substantial violation of his constitutional rights. We affirm the dismissal of his petition at the second-stage proceedings.

¶ 43 Affirmed.